# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 21, 2020

Lyle W. Cayce
Clerk

No. 19-40076

M.D.C.G., Individually, as next friend N.L.M.C., A Minor,

    Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal has its beginnings on a horrific day from hell. After apprehending MDCG, her fifteen-year-old daughter NLMC, and their fourteen-year-old family friend JMAE for entering the United States without authorization, and after loading them into his vehicle, Border Patrol Agent Esteban Manzanares drove around to various locations in the South Texas countryside where he physically and sexually abused the three helpless immigrants. This abuse included rape, beatings, knife body-carvings, strangulations, and the attempted burial of a living victim. The day from hell climaxed with suicide—of the Border Patrol Agent who was found dead, with JMAE tied to his bed, when alerted law enforcement arrived at his apartment.

No. 19-40076

MDCG and the two minors brought suit against the United States under the Federal Tort Claims Act (FTCA), asserting claims of assault and battery, false imprisonment/false arrest, intentional and negligent infliction of emotional distress, negligence, and negligent hiring, retention, and supervision. Under Fed. R. Civ. P. 12(b)(1), the district court dismissed the plaintiffs' claims based on Manzanares's conduct, holding that Manzanares's actions fell outside the scope of his employment. Following discovery, the district court granted summary judgment on the negligent supervision claims brought by MDCG on behalf of herself and NLMC. The district court denied the government's motion for summary judgment on the negligent supervision claims brought on behalf of JMAE. Under Fed. R. Civ. P. 54(b), the district court entered final judgment as to all claims brought by MDCG, individually and as next of friend of NLMC. MDCG appeals both the 12(b)(1) dismissal and grant of summary judgment.[1]

Alas, the FTCA does not extend a helping hand to the victims of Agent Manzanares. We conclude that Manzanares's conduct was outside the scope of his employment, and accordingly, we AFFIRM the district court's dismissal of MDCG and NLMC's claims based on Manzanares's conduct. We further hold that the FTCA's discretionary function exception deprived the district court of subject matter jurisdiction over MDCG and NLMC's negligent supervision claims. We thus VACATE the portion of the district court's judgment which addressed the merits of the negligent supervision claims and REMAND those claims to the district court to DISMISS for lack of jurisdiction.

---

[1] JMAE's negligent supervision claim is the only claim that survived the district court's 12(b)(1) and summary judgment rulings. But the district court has yet to enter judgment on JMAE's dismissed claims. Thus, none of JMAE's claims are the subject of this appeal.

No. 19-40076

I.

On March 12, 2014, United States Border Patrol Agent Esteban Manzanares was assigned to a post along the Rio Grande River Sector in Hidalgo County, Texas when he spotted MDCG, her fifteen-year-old daughter NLMC, and their fourteen-year-old family friend JMAE. MDCG and the two teenagers, all from Honduras, had recently crossed the United States–Mexico border together without authorization. Manzanares, who was patrolling in his official government vehicle, approached MDCG and the two girls and ordered them to follow his instructions. They then surrendered to Manzanares.

Manzanares told MDCG that he would be taking her to a facility for mothers and their children. He then drove around with the plaintiffs making several stops. At the second stop, Manzanares placed black restraint bands on the plaintiffs' wrists and put them in the back of his Border Patrol kilo unit truck. He then drove the plaintiffs to what is alleged to have been the McAllen duty station, a Border Patrol processing facility. But instead of taking the plaintiffs inside the facility, Manzanares left them in his vehicle, entered the duty station alone, and returned to his vehicle two to three minutes later. Manzanares then drove the plaintiffs to an unpopulated area where he taped their mouths and wrists, which he said was due to receiving a secondary order.

Manzanares eventually stopped his vehicle and forcibly removed MDCG and her daughter from his truck. Manzanares then struck MDCG's face and body, forcibly dragged her up a hill, strangled her, and twisted her neck. Manzanares then pulled out a knife and began to cut MDCG's arms and wrists. MDCG believed she was going to be killed and, at some point, lost consciousness. Manzanares then turned to NLMC. NLMC struggled while Manzanares strangled, choked, and twisted her neck. During the assault, Manzanares provocatively touched NLMC's breasts and vaginal area and used his knife to cut her left arm. Manzanares also took pictures of NLMC's semi-

No. 19-40076

unclothed body. When Manzanares was taking these pictures, NLMC played dead.

While Manzanares was assaulting NLMC, MDCG regained consciousness and ran for help. Following her escape, MDCG encountered a Border Patrol agent who asked her why she was disheveled and covered in blood. MDCG told the agent that she had been assaulted by someone "dressed just like you." After the agent radioed for help, MDCG was transported to the hospital. Meanwhile, apparently thinking NLMC was dead, Manzanares covered her with dirt and debris and left the area with JMAE in the vehicle. NLMC recovered, ran away, and began to look for her mother. She then encountered another Border Patrol agent, was placed in an ambulance, and was transported to the hospital. Manzanares eventually took JMAE to his apartment where he forcibly bathed her, tied her to a bed, sexually assaulted her, and took nude photos of her. JMAE's abuse ended when Manzanares committed suicide as law enforcement closed in on his apartment, hours after he first arrested his victims.

Manzanares's field supervisor was Luis Solis. Although Solis had made initial contact with Manzanares on the morning of March 12, 2014, he did not have any further conversations with Manzanares during his shift. In fact, Solis left his shift without confirming Manzanares's whereabouts, even though there is evidence that Manzanares failed to call in foot traffic in his zone and that it was a slow day for the Border Patrol agents. Manzanares's supervisors further failed to inspect the interior of Manzanares's vehicle when he returned from his shift.

## II.

After exhausting their administrative remedies, the plaintiffs filed this FTCA suit in federal district court, asserting claims against the United States for: (1) assault and battery; (2) false imprisonment/false arrest; (3) negligent

No. 19-40076

and intentional infliction of emotional distress; (4) negligence; and (5) negligent hiring, retention, and supervision. The government filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). In response to these motions, the district court: (1) dismissed, under Rule 12(b)(1), the plaintiffs' claims based on Manzanares's conduct, holding that Manzanares's tortious actions were outside the scope of his employment; (2) mooted the 12(b)(6) motion to dismiss with respect to the claims based on Manzanares's conduct; and (3) denied the 12(b)(6) motion to dismiss with respect to the plaintiffs' negligent hiring, retention, and supervision claims.[2] These rulings thus dismissed all claims based on Manzanares's conduct. Remaining were negligence claims of hiring, retention, and supervision.

The district court then allowed discovery on the plaintiffs' remaining claims. After discovery, the government moved for summary judgment. The district court, rejecting the government's jurisdictional argument that the discretionary function exception to the FTCA applied, addressed the merits of the plaintiffs' negligent supervision claims.[3] Nevertheless, addressing the merits, it granted the government summary judgment on MDCG and NLMC's negligent supervision claims, holding that there was no evidence Solis, Manzanares's supervisor, breached a duty owed the mother and daughter when he failed to monitor Manzanares. But it held that JMAE's negligent

---

[2] In addition to their false imprisonment and intentional infliction of emotional distress claims based on Manzanares's actions, the plaintiffs also brought false imprisonment and intentional infliction of emotional distress claims premised on the actions of the agents alleged to have detained the plaintiffs after their rescue. At the motion to dismiss stage, the district court allowed those claims to proceed. But the plaintiffs later consented to the dismissal of those claims, and they are not the subject of this appeal.

[3] The district court held that the plaintiffs' negligent hiring and retention claims were barred by the discretionary function exception of the FTCA. Because MDCG fails to address those claims in her briefs, we deem them abandoned. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003).

supervision claims were different from MDCG and NLMC's claims because her abuse continued when Border Patrol agents failed to inspect Manzanares's vehicle after finding MDCG.  The district court therefore held that JMAE's negligent supervision claims should stand trial.  Thus, the district court turned to Fed. R. Civ. P. 54(b) and entered final judgment with respect to all claims brought by MDCG, on behalf of herself and NLMC, but left JMAE's claims pending before the district court.  MDCG timely appeals.

To recap: the dismissed claims subject to this appeal are MDCG and NLMC's claims for assault and battery, false imprisonment/false arrest, negligent and intentional infliction of emotional distress, negligence, and negligent supervision.

III.

We begin with the fundamentals.  The United States has sovereign immunity from any lawsuit, unless that sovereign immunity has been waived.  *See Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006).  Here, the FTCA waives that immunity when an injury is

> caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added).  This waiver of sovereign immunity applies to claims that "investigative or law enforcement officers" have committed the torts of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."  28 U.S.C. § 2680(h).

It is important to note, however, that there are several statutory exceptions to the FTCA's waiver of sovereign immunity.  The discretionary function exception is such an example.  This exception excludes tort claims

against the United States that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine whether the district court had subject matter jurisdiction under the FTCA over MDCG and NLMC's claims, we consider whether Manzanares was acting within the scope of his employment when he committed these torts against these three plaintiffs, and, secondly, whether the discretionary function exception applies to the plaintiffs' claims that the supervisors of Manzanares were negligent in their supervision of him.

## A.

We will first turn our attention to the district court's dismissal of MDCG and NLMC's claims based on Manzanares's tortious conduct. We review a dismissal for lack of subject matter jurisdiction and a district court's legal conclusions regarding scope of employment *de novo*. *See Musselwhite v. State Bar of Tex.*, 32 F.3d 942, 945 (5th Cir. 1994); *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003). We also "review[ ] *de novo* the legal issue of whether the district court has discretion to resolve disputed facts dispositive of subject matter jurisdiction, applying the same standard used by the district court." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

## 1.

Before discussing the merits of the district court's scope of employment ruling, we must first turn to MDCG's argument that the district court applied the wrong legal standard to the scope of employment inquiry. As noted earlier, the district court addressed these claims under a 12(b)(1) motion, attacking the subject matter jurisdiction of the court over the claims. Typically, "[a] district court may dispose of a motion to dismiss for lack of subject matter jurisdiction based 'on (1) the complaint alone; (2) the complaint supplemented by

undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)).  The district court recited this standard when it ruled on the government's motion to dismiss.

But, as MDCG points out, when the issue of jurisdiction is intertwined with the merits, district courts should "deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56."  *Montez*, 392 F.3d at 150 (internal quotations omitted) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)).  To be certain, in resolving whether a government employee was acting within the scope of his employment under the FTCA, we have held that a 12(b)(6) or summary judgment standard, not the Rule 12(b)(1) standard, should be applied.  *See id.* at 150–51.  Thus, to the extent the district court applied the 12(b)(1) standard, it was in error.[4]  Nonetheless, because the government moved for dismissal under both Rule 12(b)(1) and Rule 12(b)(6), we will proceed with our *de novo* review of the dismissal of MDCG and NLMC's claims based on Manzanares's conduct.  *See Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir. 1985).

2.

We now turn to the merits of the district court's ruling relating to the conduct of Officer Manzanares.  "The issue of whether an employee is acting within the scope of his employment for purposes of the FTCA is governed by

---

[4] As the government notes, it is not apparent that the district court improperly resolved disputed facts in the government's favor.  Instead, the district court appears to have accepted the allegations in the complaint as true and supplemented those facts by taking judicial notice of publicly available Border Patrol policies and procedures.  But, because the district court recited the incorrect legal standard, we will proceed under the assumption that it applied the 12(b)(1) standard to the scope of employment inquiry.

the law of the state in which the wrongful act occurred." *Bodin*, 462 F.3d at 484. Manzanares's encounter with MDCG and NLMC occurred in Texas. Under Texas law, "[t]he general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). "[I]f an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.* In applying a 12(b)(6) standard to the scope of employment inquiry, we accept the allegations contained in the complaint as true and view the facts in the light most favorable to MDCG and NLMC. *Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013).

At oral argument, MDCG's counsel conceded that Manzanares's sexual assault of NLMC fell outside the scope of his employment. We agree and further conclude that Manzanares's physical assaults of MDCG and NLMC also fell outside the scope of his employment. In Texas, an employer may be vicariously liable for intentional torts, such as assault and false imprisonment, "when the act, although not specifically authorized by the employer, is closely connected with the employee's authorized duties." *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 884 (Tex. App.–Dallas 2003, no pet.). In other words, *respondeat superior* liability exists only "if the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity." *Id.* Here, the only inference to be drawn from MDCG's allegations is that Manzanares's assaults served a personal, rather than work-related, purpose. Border Patrol's purpose is to detect and prevent the illegal entry of aliens into the United States. When Manzanares drove MDCG and NLMC away from the duty station, took them to a remote

location, placed tape over their mouths and wrists, and began to physically and sexually assault them, it is needless to say further that he was not working to advance his employer's business.

Nor can it be said, even in a remotely tangential way, that Manzanares's conduct "was so connected with and immediately arising out of authorized employment tasks as to merge the task and the assaultive conduct into one indivisible tort imputed to the employer." *See Buck v. Blum*, 130 S.W.3d 285, 289 (Tex. App.–Houston [14th Dist.] 2004, no pet.).  To be sure, as a Border Patrol agent, Manzanares had the authority to detain suspected unauthorized aliens and to use force in effectuating an arrest.  *See* 8 C.F.R. § 287.8.  But that authority is light years from asserting that Manzanares's detention of MDCG and NLMC in remote locations along the United States–Mexico border and his physical and sexual assaults of them were done in furtherance of these authorized duties.  In short, Manzanares's post-duty station conduct constituted such a deviation from his employer's goals that there was a complete absence of a causal connection between his actions and his authorized employment tasks.  It automatically follows that the district court did not err in dismissing the assault, false imprisonment, intentional infliction of emotional distress, and negligence claims based on Manzanares's post-duty station conduct.

Nonetheless, MDCG argues that Manzanares committed torts for which the United States can be held liable prior to his departure from the duty station with MDCG, NLMC, and JMAE.  Specifically, MDCG argues that Manzanares acted unlawfully, but within the scope of his employment, when he: (1) placed black restraint bands on the plaintiffs' wrists; (2) put them in the back of his kilo unit truck; and (3) left them unattended at the duty station.

Whatever the merits of these arguments, MDCG waived them by failing to assert such claims before the district court.  "[I]f a litigant desires to preserve

an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court." *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).  Although it is true that Manzanares's actions prior to the departure from the McAllen duty station are factually mentioned in the plaintiffs' complaint, this conduct is included only as part of a beginning point of the narrative that led to the plaintiffs' ordeal of tormenting assaults through the ultimate discovery of JMAE after Manzanares's suicide. The complaint did not tie these facts to the plaintiffs' causes of action.  Instead, the plaintiffs supported their causes of action under the FTCA by pointing to the allegations that Manzanares dragged MDCG up a hill, knifed MDCG and her daughter, choked them, twisted their necks, and provocatively touched NLMC and JMAE.  Even though the plaintiffs mentioned that they were restrained when Manzanares was inflicting this abuse, there is no allegation that the wrist restraint bands were part of their assault.  Further, the plaintiffs' false imprisonment claims were based on their allegations that although Manzanares "had their initial consent to detain them and take them to a [Border Patrol] facility," they did not give him consent "to assault and physically abuse them, . . . to use deadly force, and . . . to photograph the minors without clothing or partially clothed."  All such actionable conduct occurred after Manzanares took the plaintiffs away from the duty station.  Nowhere did the plaintiffs allege that Manzanares falsely imprisoned them by placing them in the back of his truck or by leaving them unattended at the duty station.

Nor did the brief in response to the government's motion to dismiss allege that the plaintiffs' claims were based on Manzanares's pre-duty station conduct.  Instead, it too focused on the post-duty station assaults and detention.  Although it is true that the government's motion to dismiss conceded that Manzanares acted within the scope of his employment up until he left the duty station, the plaintiffs' response failed to assert that

No. 19-40076

Manzanares committed pre-duty station torts. To be sure, a few isolated statements in the response to the motion to dismiss incidentally referenced Manzanares's pre-duty station conduct. Further, at a status conference following the district court's ruling on the government's motion to dismiss, the plaintiffs argued that Manzanares was acting within the scope of his employment when he initially detained them to bolster their negligent supervision claims. But, notwithstanding the government's concession that Manzanares was initially acting within the scope of his employment, the plaintiffs never contended that the United States could be held vicariously liable because Manzanares placed black restraint bands on their wrists, transported them in the back of his truck, and left them unattended at the duty station.

Thus, we can only but conclude that the plaintiffs' argument on appeal—that these pre-duty station actions were tortious conduct within Manzanares's scope of employment—has been waived. We therefore AFFIRM the district court's dismissal of MDCG and NLMC's claims based on Manzanares's conduct.[5]

### B.

We will now turn to MDCG and NLMC's negligent supervision claims, which primarily focus on Luis Solis, Manzanares's immediate supervisor.

---

[5] MDCG also argues that the district court erred in incorporating the dismissal of the claims based on Manzanares's conduct into the Rule 54(b) judgment because it converted the dismissal of those claims into a dismissal with prejudice. We disagree. Both the 54(b) judgment and the order granting the government's motion to dismiss made clear that the district court intended to dismiss the claims based on Manzanares's conduct for lack of jurisdiction. And, although the Rule 54(b) judgment certified that the dismissal of MDCG and NLMC's claims based on Manzanares's conduct was "final," it did not indicate that those claims had been adjudicated on the merits. We thus construe the district court's dismissal of MDCG and NLMC's claims based on Manzanares's conduct as a dismissal without prejudice. *See* Fed. R. Civ. P. 41(b).

12

No. 19-40076

Recall that MDCG and NLMC's negligent supervision claims are premised on Solis's failure to monitor Manzanares, to confirm his whereabouts, and to protect the plaintiffs from abuse.[6]  Before we can even consider the merits of these claims, however, we must address the government's contention that the discretionary function exception[7] bars the negligent supervision claims and hence our jurisdiction to act further.  *See Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (en banc).  We review questions of sovereign immunity *de novo.  See Gibson v. United States*, 809 F.3d 807, 811 (5th Cir. 2016).

Whether a government employee's actions fall within the discretionary function exception "involves two inquiries: (1) the conduct must be a matter of choice for the acting employee; and (2) the judgment [must be] of the kind that the discretionary function exception was designed to shield."  *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (internal quotations and citations omitted).    If either one of these conditions is not met, the discretionary function exception fails to protect the United States from suit. *See Spotts v. United States*, 613 F.3d 559, 567–68 (5th Cir. 2010).

Thus, we first ask whether Solis had a choice in how to supervise Manzanares.  The discretionary function exception is inapplicable if the government employee's challenged conduct violated a specific directive in a federal statute, regulation, or policy.  *See id.* at 567.  We reach that result because an employee has no choice but to adhere to a mandatory rule.  *Id.* at

---

[6] The plaintiffs also alleged that Manzanares's other supervisors negligently failed to inspect his vehicle at the end of his shift.  They further argued that, once Border Patrol found MDCG, supervisors should have immediately done a roll call of all agents.  We decline to address these alleged supervisory failures because they relate only to JMAE's claims, still pending before the district court.

[7] As we have earlier noted, this exception excludes claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

568. Here, the district court concluded that there was no mandatory policy that either directed or proscribed a course of action to be taken by Manzanares's supervisors. It is MDCG's burden to convince us otherwise, *see Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018), and she has made no argument that the district court erred in its analysis. Further, our review of the record has uncovered no Border Patrol policy, regulation, or procedure that specifically directed the extent to which Solis was to oversee his subordinates or how often he was to maintain contact with them. We therefore agree with the district court that Solis had a choice in how to supervise Manzanares.[8]

The second prong asks whether Solis's judgment in choosing how to supervise Manzanares is the kind of judgment "that the discretionary function exception was designed to shield." *See Tsolmon*, 841 F.3d at 382. Congress created the discretionary function exception to protect legislative and administrative decisions from judicial second-guessing. *See United States v. Gaubert*, 499 U.S. 315, 323 (1991). Thus, decisions that are susceptible to legislative or administrative considerations are the type of judgments that fall within the discretionary function exception's scope. *See id.* at 325.

We agree with other circuits that have held that federal employees' supervision of subordinates involves the kind of judgment that the discretionary function exception was meant to protect. *See, e.g.*, *Gordo-González v. United States*, 873 F.3d 32, 37 (1st Cir. 2017); *Snyder v. United States*, 590 F. App'x 505, 509–10 (6th Cir. 2014); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); *see also Tonelli v. United*

---

[8] We again note that we are pretermitting the supervisors' alleged failure to inspect Manzanares's vehicle at the end of his shift and the alleged failure to conduct a roll call because those alleged policy violations are unrelated to MDCG and NLMC's claims, the only claims before us in this appeal.

No. 19-40076

*States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."). An agency's supervision of its employees involves matters of balancing management interests in the administration and operation of the agency to carry out effectively its governmental mission. For example, a Border Patrol supervisor's decisions with respect to how often to communicate with his field agents may be guided by the balancing of his need to divide his attention between multiple employees and his duty to ensure the safety of individual agents. Or the supervisor's judgment in how closely to monitor agents will be informed by the need to manage his resources efficiently. Thus, whatever Solis's reasons for failing to monitor more closely Manzanares's whereabouts, his supervisory decisions encapsulate the essence of the discretionary function exception.

In sum, MDCG points us to no directive that specifically prescribed how Solis was to oversee Manzanares, and supervisory judgments are the type of judgments that the discretionary function exception protects. The discretionary function exception to the FTCA therefore bars MDCG and NLMC's negligent supervision claims. It follows that the district court erred when it reached the merits of those claims, and we reverse and vacate its decision in this respect.[9]

IV.

We recap: Although MDCG and NLMC suffered grievous personal injuries by the criminal hands of Agent Manzanares, they cannot recover

---

[9] We recognize that our discretionary function exception ruling may have implications for JMAE's negligent supervision claims, which are still pending before the district court. But we decline to address the effect of our ruling on claims not before us. *See Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016) ("[W]e have jurisdiction over only those claims that the district court actually conclusively resolved through dismissal."). The district court's disposition of JMAE's remaining claims must not be inconsistent with this opinion.

damages from the United States under the FTCA. Manzanares's tortious conduct was plainly outside the scope of his employment with the United States and consequently it cannot be held liable. Any argument that the United States is liable for Manzanares's pre-duty station conduct has been waived by the plaintiffs' failure to assert the argument before the district court. We thus AFFIRM the district court's dismissal, for lack of jurisdiction, of MDCG and NLMC's claims based on Manzanares's tortious conduct.

With respect to the plaintiffs' claims that the United States is liable for Solis's negligent supervision of Manzanares, we have held that we have no jurisdiction over the merits of those claims because the supervision of Manzanares was a matter within the agency's discretion and is excepted from the government's liability as a discretionary function under the FTCA. Given that the district court had no jurisdiction to decide the merits of MDCG and NLMC's negligent supervision claims, we VACATE the portion of its judgment that reached the merits of those claims and REMAND those claims to the district court to DISMISS for lack of jurisdiction.[10] Accordingly, the judgment of the district court is:

AFFIRMED in part, VACATED in part, and REMANDED.

---

[10] Judge Stewart concurs in the judgment only.