# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30340

_____

Kristen Morales,

*Plaintiff—Appellant*,

*versus*

New Orleans City;
Ed Michel,
*Interim Inspector of the Office of Inspector General,
in official and individual capacities*;
Bobbie Jones; Office of the Inspector General,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1992

_____

Before Higginbotham, Smith, and Higginson, *Circuit Judges*.

Per Curiam:[*]

Kristen Morales was fired by the New Orleans Office of Inspector General ("OIG"). Morales contends it was retaliation for her protected workplace conduct.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30340

She litigated her discriminatory and retaliatory-discharge claims before the New Orleans Civil Service Commission ("CSC"). The CSC determined she was terminated for legal cause—giving away an OIG-owned iPhone and then lying about it—and a Louisiana appellate court affirmed.

Morales also filed suit in federal district court against OIG, the City of New Orleans ("CNO"), and various OIG employees, alleging that she was fired without legal cause for protected activities in violation of Title VII. In addition to this Title VII retaliation claim, Morales brought various state law claims and a claim for pre-termination, disparate treatment in violation of Title VII. The district court, after finding that all of Morales's claims were precluded,[1] granted defendants summary judgment.

We affirm summary judgment as to each claim except for the disparate-treatment claim. We vacate summary judgment as to that claim and remand for further proceedings.

I.

*A.    The Termination*

Morales, employed as an Investigator by OIG, was suspended in December 2020 and was fired shortly thereafter. OIG justified her suspension and termination on two grounds:

*First*, OIG stated, in the letter of suspension, that Morales had violated CNO policy by, *inter alia*, "g[iving] an OIG-owned iPhone to Reginal Fournier, a private individual unaffiliated with OIG or the CNO, without

---

[1] Some authorities use "res judicata" or "collateral estoppel" to refer interchangeably to claim preclusion, issue preclusion, or the general concept of preclusion. To avoid confusion, we adhere to the following terminology: (1) "Res judicata" refers only to claim preclusion. (2) "Collateral estoppel" refers only to issue preclusion. (3) "Preclusion" or "the preclusive effect of judgments" refers to the doctrine of preclusion in general.

authorization."

*Second*, OIG explained that Morales lacked candor when OIG questioned her about the iPhone incident. At that interview, Morales initially claimed that she did not recall whether the iPhone was OIG's. But she changed tack once the interviewers confirmed to her that the iPhone was, in fact, OIG property—thereon claiming that her superiors had authorized the donation. Specifically, she averred that she had consulted with OIG legal counsel, had received approval from her supervisor and the Inspector General, and had retained written documentation of that approval.

OIG, investigating the veracity of Morales's statements, asked her for that documentation. She provided none. Nor was OIG able to find any evidence of that alleged approval. OIG then contacted the individuals Morales had referenced in the interview. None could corroborate her claim. Both her supervisor and the Inspector General denied approving any such donation; the legal counsel denied knowledge of the same.

Based on the results of the investigation, OIG found that Morales gave away an OIG-owned iPhone without authorization; it thus concluded that she violated CNO policy. OIG further found that she had falsely claimed she was authorized to donate the iPhone; it thus concluded that she lacked candor.

Given those findings and conclusions, Ed Michel—then Interim Inspector General—concluded there was cause to suspend and terminate Morales. He therefore placed her on emergency suspension and provided her with written notice of her upcoming pre-termination hearing.

B.    *The Administrative Hearing*

Morales's pre-termination hearing was about three weeks after her suspension. At that hearing, OIG had the burden to prove by a preponderance of the evidence (1) that it had "legal cause" to discipline or terminate

her and (2) that the punishment imposed was "commensurate with the dereliction." She was represented by counsel and was allowed to present evidence and averments in her favor.

As part of her defense, Morales asserted that she was being suspended and terminated in retaliation for, *inter alia*, exercising her "federally protected right to file a charge with the EEOC." Additionally, she contested the other policy violations listed in her suspension letter. But she did not offer any evidence showing that she was expressly authorized to donate the OIG iPhone.

At the conclusion of the proceedings, the hearing examiner found that (1) Morales violated CNO policy by donating the OIG iPhone without authorization and (2) she lacked candor in OIG's investigation. It thus concluded that OIG did not "abuse[] its discretion or act arbitrarily by terminating [her]."

## C.    *The State Appellate Proceedings*

Morales appealed her suspension and termination to the CSC, which then held a three-day trial. She was represented by counsel, who offered evidence, proffered witness testimony, and cross-examined OIG's witnesses.

The CSC agreed with the hearing examiner's findings and determined that Morales's "actions in regard to the iPhone, especially her lack of candor in wrongfully claiming she had permission to give it to Fournier when there is absolutely no evidence to support that assertion, justified the suspension and termination." It also concluded "that the OIG ha[d] carried its burden of proving the occurrence of [Morales's] wrongful activity and that her conduct impairs the efficiency of the public service in which the OIG is engaged." Consequently, the CSC denied her appeal, thereby affirming her suspension and termination.

No. 23-30340

She then appealed to a Louisiana state court of appeal. The court observed that "the CSC denied [her] appeal based solely on its finding that the OIG had good cause to terminate [her] for the iPhone-related violation." *Morales v. OIG*, 366 So. 3d 526, 533 n.7 (La. App. 4th Cir. 2022). It therefore affirmed the CSC's decision. *Id.* at 540. The Louisiana Supreme Court denied review.

## II.

During the pendency of the state appellate proceedings, Morales sued defendants in federal district court. She raised various statutory and non-statutory claims for, *inter alia*, disparate treatment, retaliation, violations of human rights, deprivation of property rights, unfair trade practices, and intentional infliction of emotional distress ("IIED").

After the conclusion of the state proceedings, OIG and CNO filed separate motions for summary judgment.[2] The district court granted summary judgment and dismissed her claims. This appeal followed.

## III.

Under 28 U.S.C. § 1738, "decisions that come from a judicially reviewed action by a state administrative body" are "entitled to the same full faith and credit in every court of the United States as it has by law or usage in courts of such State." *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997) (per curiam) (cleaned up). Those decisions receive the same preclusive effect in federal court as they would in the courts of that state.

Therefore, Louisiana law determines the preclusive effect of Morales's prior proceedings. *Id.* (citing *Marrese v. Am. Acad. of Ortho. Surgeons*,

---

[2] OIG's motion for summary judgment was filed on behalf of OIG, Michel, and Jones.

No. 23-30340

470 U.S. 373, 382 (1985)). LA. R.S. § 13:4231 provides,

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

LA. R.S. § 13:4231. Louisiana courts interpret that provision as embracing "both claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Henkelmann v. Whiskey Island Pres., L.L.C.*, 145 So. 3d 465, 470 (La. App. 1st Cir. 2014).

## IV.

Collateral estoppel bars Morales from relitigating the cause of her termination. As quoted above, collateral estoppel bars relitigation of "any issue actually litigated and determined if its determination was essential to that judgment." LA. R.S. § 13:4231(3). Both conditions are satisfied with respect to the cause of Morales's termination.

*First*, that issue was actually litigated. At each stage of the prior proceedings, OIG averred that it suspended and fired Morales for giving away the OIG iPhone and lacking candor. The validity of OIG's justification was

6

likewise contested by Morales at each stage of the proceedings. Indeed, in her pre-termination hearing response, she claimed that the adverse employment action

> [was] done in retaliation for exercising my right as a [c]ivil [s]ervant to file an appeal; my right as a City of New Orleans employee to file grievances for the harassment by the OIG, and my federally protected right to file a charge with the EEOC and not suffer retaliation.

Thus, the cause of her termination was actually litigated in the prior proceeding.

*Second*, that issue was essential to the judgment in the state proceeding. The CSC was required, *inter alia*, "to decide . . . whether [OIG] ha[d] a good or lawful cause for taking disciplinary action." *Whitaker v. New Orleans Police Dep't*, 863 So. 2d 572, 574 (La. App. 4th Cir. 2003) (citation omitted). In other words, the reason behind her firing was a central issue that the CSC had to resolve to render its decision.

The hearing examiner observed that OIG admitted that it fired Morales based on the iPhone incident and her lack of candor. That, the CSC agreed, was the "primary bas[is]" for her termination. And the state appellate court affirmed those findings, noting that "the CSC denied [her] appeal based solely on its finding that the OIG had good cause to terminate [her] for the iPhone-related violation." *Morales*, 366 So. 3d at 533 n.7. Thus, Morales is bound to the prior proceeding's determination that OIG fired her solely because of the iPhone-related violation.

Morales contends that preclusion shouldn't apply because of various alleged procedural deficiencies in the state administrative proceeding. She claims, *inter alia*, (1) that she did not have the opportunity "to serve interrogatories, requests for admissions, or requests for production of documents" and (2) that the state appellate review process was "based on a mixed stan-

dard of review[] with respect to the iPhone allegation only." Neither rises to the level of a denial of constitutional due process.

State proceedings failing to satisfy the requirements of constitutional due process are not accorded preclusive effect. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482–83 (1982). The fundamental requirement of due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[3] "In the pre-deprivation context, all that federal due process requires is 'notice and an opportunity to respond.'"[4] The record shows that Morales received both.

Before her termination, Morales was timely issued an eleven-page letter detailing OIG's justifications for the adverse employment action. That letter provided three-weeks' notice of her pre-termination hearing and of her right to have counsel present and to submit evidence in her favor. She was also "given an opportunity to respond to [OIG's] reasons for her discharge." *Id.* She took advantage of that opportunity by submitting a fifteen-page letter responding, in detail, to each of OIG's proffered justifications for firing her.

In short, during the pre-termination phase of the proceedings, Morales was "afforded the full panoply of federal due process protections." *Id.*; *see also Darlak v. Bobear*, 814 F.2d 1055, 1062–63 (5th Cir. 1987) (con-

---

[3] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Three factors guide our identifying the specific dictates of due process: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

[4] *Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 583 (5th Cir. 2016) (quoting *McDonald v. City of Corinth*, 102 F.3d 152, 155 (5th Cir. 1996)).

cluding that suspension followed by opportunity for a hearing comported with due process).

Likewise, Morales received all the post-deprivation process guaranteed by the federal constitution. Morales, with counsel, exercised her right to appeal to the CSC, which had the authority to "award costs, attorney fees, and back pay, and . . . [to] restore all benefits and emoluments of office."[5] There, she litigated her claims for three days and was allowed to subpoena documents, testify, and cross-examine witnesses. Further, she was afforded the right to judicial review of the CSC's determination in a Louisiana appellate court.

Put another way, after her termination, Morales had "a public hearing" that allowed her "the opportunity to present [her] evidence" and was "complemented by administrative as well as judicial review." *Kremer*, 456 U.S. at 484–85. Beyond dispute is that the prior state proceedings were more than sufficient to satisfy the procedural requirements of the Due Process Clause. *See id.*

Morales also avers that Title VII claims are inherently exempt from the preclusive effects of prior state administrative proceedings. She relies on *Garner v. Giarrusso*, 571 F.2d 1330, 1335–37 (5th Cir. 1978), and *Frazier v. King*, 873 F.2d 820, 823–24 (5th Cir. 1989), wherein we denied res judicata effect to prior CSC proceedings.

Both *Garner* and *Frazier* are inapposite, for both denied res judicata effect to prior *unreviewed* state administrative decisions. In *Frazier*, the prior state proceeding was appealed only to the Louisiana Civil Service

---

[5] *Johnson v. Bd. of Supervisors of La. State Univ.*, 32 So. 3d 1041, 1047 (La. App. 2d Cir. 2010) (citing *Reimer v. Med. Ctr. of La. at New Orleans*, 688 So. 2d 165, 169 (La. App. 4th Cir. 1997)).

Commission—not the Louisiana courts. *Id.* at 823. Likewise, in *Garner*, there is no indication that the plaintiff appealed his discharge beyond the CSC. 571 F.2d at 1335.

That procedural distinction makes all the difference. At most, unreviewed state administrative decisions are not entitled to preclusive effect against Title VII claims in subsequently filed federal suits.[6] But we *must* give preclusive effect to decisions that "come from a judicially reviewed action by a state administrative body," for "such judgments are entitled to the same full faith and credit in every court of the United States as it has by law or usage in courts of such State." *Stafford*, 123 F.3d at 295 (citing 28 U.S.C. § 1738) (cleaned up).

Finally, Morales contends that preclusion cannot apply to her claims against Michel, Jones, and CNO because none was party to the prior proceeding.

Under Louisiana law, the party-identity requirement "does not mean that the parties must have the same physical identity, but that the parties must appear in the same capacities in both suits." *Burguieres v. Pollingue*, 843 So. 2d 1049, 1054 (La. 2003). So, generally, "[a] party appearing in an action in one capacity, individual or representative, is not . . . bound . . . in a subsequent action in which he appears in another capacity." *Id.* (citation omitted).

But that requirement is concerned only with the identity of the party *against* whom preclusion is invoked. In other words, the party *invoking* preclusion need not be involved in the prior proceeding. *See Williams v. Orleans*

---

[6] *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims.").

*Levee Dist. & Its Bd. of Comm'rs*, 31 So. 3d 1048, 1049 (La. 2010) (per curiam).

Indeed, the Louisiana Supreme Court addressed this question in *Williams*, in which a city employee alleged, *inter alia*, that he was wrongfully terminated in violation of federal and state employment discrimination law.[7] Though a prior proceeding had already determined that the employee was fired for legal cause, the state trial and intermediate courts held that preclusion did not apply to his claims against defendants who were not parties to the prior proceeding.[8]

Reversing, the supreme court explained that Louisiana's party-identity requirement is relevant only when preclusion is "being used *against* a nonparty to the litigation." *Williams*, 31 So. 3d at 1049 (emphasis substituted).  That requirement was met because the employee—i.e., the party against whom preclusion was invoked—"was a party to the litigation in which it was determined that he was fired for cause."  *Id.*  Accordingly, the non-party defendants in *Williams* could invoke preclusion "insofar as it applied to claims . . . resolved by the [prior] litigation which determined that [the employee] was lawfully terminated for insubordination."  *Id.*

So too here.  Michel, Jones, and CNO—like the non-party defendants in *Williams*—have invoked preclusion *against* Morales.  She is a party to both proceedings, so the party-identity requirement is satisfied.  Thus, all of the defendants may invoke collateral estoppel to preclude Morales from relitigating the cause of her termination.

In sum, the state proceeding determined that the sole and legal cause

_____

[7] *Williams v. Orleans Levee Dist. & Its Bd. of Comm'rs,* 24 So. 3d 307, 310 (La. App. 4th Cir. 2009), *rev'd*, 31 So. 3d 1048 (La. 2010) (per curiam).

[8] *Id.* at 314 ("Although the First Circuit held that [he] was lawfully terminated, the State was not a party to that litigation. Accordingly, *res judicata* does not apply.").

No. 23-30340

for Morales's firing was the iPhone-related violation. Collateral estoppel bars relitigation of that determination of ultimate fact. So she can no longer bring forth "new evidentiary facts . . . to obtain a different determination of that ultimate fact."[9]

V.

*A.    Retaliation Claims*

To establish a *prima facie* case of retaliation under the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:301 *et seq.*, and Title VII, Morales must show, *inter alia*, that "a causal connection exists between the protected activity and the adverse action." *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (citation omitted).[10] Put another way, she must demonstrate that she would not have been suspended and fired but-for OIG's retaliatory motive.

That is a showing Morales cannot make. The prior proceeding established, by a preponderance of the evidence, that OIG's proffered justification *was the reason* she was fired. She cannot contest that OIG fired her for the iPhone-related violation. It is therefore impossible for her to prove pretext by a preponderance of the evidence, for she cannot recover unless she rebuts "*each* nonretaliatory reason articulated by the employer." *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021) (cleaned up). Consequently, collateral estoppel bars her claim of retaliatory discharge.

Pushing back, Morales posits that OIG could have fired her for two

---

[9] Restatement (Second) of Judgments § 27 cmt. c (Am. L. Inst. 2023).

[10] LEDL and Title VII retaliation claims are analyzed identically. *See Hartley v. Univ. of Holy Cross*, 370 So. 3d 1151, 1163 (La. App. 4th Cir. 2023); *see also id.* at 1159 ("LEDL mirrors federal employment discrimination law; thus, Louisiana courts look to federal jurisprudence in construing it." (citations omitted)).

reasons—one of which was lawful (the iPhone-related violation), the other unlawful (retaliation). She contends that *Bostock v. Clayton County*, 590 U.S. 644 (2020), changed Title VII's causation standard such that a plaintiff can recover under the statute even if one basis for the termination is not unlawful.

Morales's reliance on *Bostock* is misplaced. Though *Bostock* "expanded the groups of individuals protected by Title VII, it in no way altered the preexisting legal standard" applicable to proving claims of retaliation. *Newbury*, 991 F.3d at 677 (citation omitted). It remains the plaintiffs' burden to "rebut each . . . nonretaliatory reason articulated by the employer." *Id.* at 678 (cleaned up). That is precisely why *Bostock* observed that "Title VII has nothing to say" about an employer that, irrespective of sex, would have fired an employee for tardiness or incompetence. 590 U.S. at 660.

Regardless, Morales's erroneous reading of *Bostock* does not advance her cause. The prior proceeding determined that the iPhone-related violation—that is, OIG's lawful reason for termination—was *the sole reason* she was fired. That determination necessarily rejects all other causes, including her assertion that she was fired in retaliation for engaging in Title VII-protected activity.

The state proceeding leaves no room for us to infer that Morales's firing was motivated, in any part, by unlawful retaliatory intent. Thus, she cannot show a causal relationship linking her Title VII protected activity to her suspension and termination. *See Outley*, 840 F.3d at 219. Her retaliation claims fail.

## B.    *Due Process Claims*

Morales claims that OIG, CNO, and Michel deprived her of procedural and substantive due process.

Her procedural due process claim fails for two reasons. One, as estab-

lished earlier, the prior state proceeding—including the pre-termination hearing and the post-deprivation appeals—comported with the strictures of constitutional due process. *See supra* part IV.B.1. Two, it is fatally wounded by collateral estoppel. She raised that exact issue before the CSC and Louisiana appellate court. Both appellate tribunals rejected her claim, the latter finding "no violation of [her] Due Process rights." *Morales*, 366 So. 3d at 539.

Nor is there any merit to her substantive due process claim. "Public officials violate substantive due process rights if they act arbitrarily or capriciously." *Jones v. La. Bd. of Supervisors of Univ. of La. Sys.*, 809 F.3d 231, 240 (5th Cir. 2015) (citation omitted). "To prove a substantive due process violation in this context, an employee must show that a public employer's decision 'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" *Id.* (citation omitted). Morales cannot make that showing, for she is bound to the prior proceeding's determination that OIG had legal cause to fire her for the iPhone-related violation. *See supra* part IV.A.

## C.    *Claims Against Jones*

Morales brings two claims against Jones under state tort law and the Louisiana Unfair Trade Practices Act ("LUTPA"), *see* La. R.S. § 51:1405, *et. seq.*

Claiming IIED, Morales alleges that Jones "falsely reported" an incident that triggered OIG's investigation into the iPhone-related violation. That investigation, in turn, resulted in Morales's suspension and termination.

Her IIED claim is meritless. Louisiana courts have consistently limited recovery for emotional distress from "workplace setting[s] . . . to cases which involve a pattern of deliberate, repeated harassment over a period of

time." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000) (citations omitted). The complaint pleads, at most, three, non-outrageous, isolated incidents of conduct. That is not enough to raise an IIED claim.[11]

Furthermore, under Louisiana tort law, plaintiffs must prove, *inter alia*, that "the defendant's . . . conduct was a legal cause of the plaintiff's injuries." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006) (citation omitted). The allegedly tortious conduct must therefore be "a cause-in-fact of [the] harm"—*e.g.*, "a substantial factor in bringing about that harm."[12]

As explained in *LaBove v. Raftery*, 802 So. 2d 566, 582 (La. 2001), legal termination is a superseding cause in an IIED claim seeking recovery for emotional distress resulting from that termination. Morales's losses were caused solely by her iPhone-related violation—a legal basis for termination— "rather than any attempt to inflict severe emotional distress." *Id.*[13] Thus, Jones's allegedly tortious conduct was not the legal cause of Morales's emotional distress.

Also without merit is Morales's LUTPA claim. She alleges that Jones

---

[11] *See Nicholas*, 765 So. 2d at 1027 (collecting cases and discussing *Stewart v. Parish of Jefferson*, 688 So. 2d 1292 (La. App. 5th Cir. 1996), where "[IIED] was not shown, even though a supervisor maintained two-year's harassment . . . which ultimately led to the employee's termination"); *see also Beaudoin v. Hartford Accident & Indem. Co.*, 594 So. 2d 1049, 1051–52 (La. App. 3d Cir. 1992) (holding supervisor's eight-month pattern of abuse, including falsely accusing employee of mistakes, did not give rise to IIED claim).

[12] *Dixie Drive It Yourself Sys. New Orleans Co. v. Am. Beverage Co.*, 137 So. 2d 298, 302 (La. 1962) (citations omitted). "The rules on cause in fact for negligent conduct . . . appl[y] . . . in the case of intentional conduct." RESTATEMENT (SECOND) OF TORTS, § 870, cmt. *l* (AM. L. INST. 2024) (citing RESTATEMENT (SECOND) OF TORTS, §§ 431–34 (AM. L. INST. 2024)); *see Hubbard v. Oswalt*, 169 So. 3d 760, 763 (La. App. 2d Cir. 2015) ("A critical element in any tort claim is proving factual cause.").

[13] *See* RESTATEMENT (SECOND) OF TORTS § 432(1) (AM. L. INST. 2024).

made a false representation "regarding the nature and/or origin of reports concerning Morales' behavior." That claim is "unbelievably frivolous."[14] LUTPA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices *in the conduct of any trade or commerce.*" LA. R.S. § 1405(A) (emphasis added). Plainly, Jones and Morales did not engage in "trade or commerce." *See* LA. R.S. § 1402(10).

So, Morales's claims against Jones were properly dismissed.

### D.     *Disparate-Treatment Claim*

Morales contends that the state administrative determination does not bar her disparate-treatment claim arising from facts that allegedly occurred before her suspension and removal.

Morales points to Count Five of the Third Amended Complaint, which pleaded that OIG treated Morales differently on account of her sex in three instances. ECF No. 53 at 32-33. First, she received a letter of reprimand for not timely entering her hours in Wingswept—OIG's case management system—but William Bonney, Michael Centola, and Terrance Barret did not. *Id.* at 32. Second, her request for a five-percent pay increase following her attaining a particular certification was denied. *Id.* at 32-33. Third, she was required to maintain hours for her certifications, but her male colleagues were not. *Id.* at 33.

We agree that the disparate-treatment claim, premised on these alleged pre-removal incidents, is not precluded by the state administrative determination that her removal was for giving away an OIG-owned iPhone and lying about it and was thus proper. The determination bars Morales from relitigating her removal but it does not foreclose Morales from seeking

---

[14] *See United States v. States*, 242 F. App'x 362, 363 (7th Cir. 2007) (per curiam).

redress for the alleged pre-removal disparate treatment. That Morales's complaint also speaks broadly to a "campaign of retaliation" following these incidents and her complaints about them does not convert this pre-removal, disparate-treatment claim into a challenge to her ultimate removal.[15] Defendants did not set out an argument below for why the state administrative determination that the removal was proper precluded litigation of the pre-removal, non-retaliation, discrimination claim made in Count Five. And Morales sufficiently distinguished her pre-removal, disparate-treatment claim in her opposition to the motions for summary judgment, arguing that "[t]he present suit encompasses issues that came months before the suspension and termination that was central to the CSC hearing," ECF 71 at 11, "the basis of this suit arises from Morales's EEOC charge filed" "almost a month before her initial suspension," *id.* at 7, and the "subsequent retaliatory conduct that encompasses the suspension and termination has become part of this suit but was not the initial claim for discrimination," *id.* at 8.[16]

---

[15] The factual background of Morales's complaint also distinguishes between the claims, noting that she "asserts that not only has she been retaliated against for opposing and reporting discriminatory, unethical, and illegal behavior, but that other employees outside her protected classes of race and gender at OIG have been treated more favorably than her," before going on to list the alleged incidents discussed above. ECF 53 at 24-25.

[16] The dissent argues that Morales "aver[ed] that she could succeed on her title VII claims *only* if a jury found pretextual the legitimate reason for her termination" and so could not have "actually believed that Count Five was entirely separate all along . . . ." Diss. Op. at 2 (citing ECF 71 at 18) (emphasis added). While her summary judgment opposition did argue that "a jury could find the[] reasons [for her removal] were pretext," she also argued that a jury could find that she "would not have been discriminated against and later terminated had it not been for illegitimate racial and gender reasons and retaliation." ECF 71 at 18. As stated above, Morales is incorrect that she could litigate that her removal was retaliatory (and the iPhone incident as a basis for removal was pretextual), but we agree with her separate argument that she was not barred from litigating whether she was discriminated against before her termination.

No. 23-30340

\* \* \*

The summary judgment is AFFIRMED on each claim except for Morales's disparate-treatment claim. The summary judgment on the disparate-treatment claim is VACATED and we REMAND for further proceedings on that claim.

JERRY E. SMITH, *Circuit Judge*:

The majority's well-written opinion correctly dismisses most of Morales's claims. But it errs in vacating and remanding Count Five—her sex-based disparate-treatment claim—thereby prolonging a case that should be doomed to failure before considering its merits. I respectfully dissent.

Morales's disparate-treatment claim is dead in the water for two reasons. It is both (1) forfeited on appeal and (2) inadequately pleaded. Either is a sufficient basis for affirming the summary judgment.

I.

The majority vacates and remands Count Five of the Third Amended Complaint, which it construes as pleading a claim based on facts separate from those relevant to Morales's suspension and termination. *See* Op. at 16–17 & n.15. Assume, *arguendo*, that the majority is correct. *But see infra* part II. Even so, it cannot avoid the pesky issue of forfeiture.

At oral argument, Morales's counsel was asked whether she had contended that the allegations of discrimination "littered throughout" her complaint were unrelated to the removal. O.A. at 10:29–50. Counsel responded in the affirmative. *See* O.A. at 10:50–11:00. Just one problem—the record on appeal belies that representation.

In her response to OIG's motion for summary judgment, the only legal basis Morales advanced regarding Count Five was her purported inability "to raise affirmative defenses in her New Orleans CSC hearing." ECF No. 62 at 13. Likewise, her opposition to the City's motion for the same *did not* aver that Count Five was predicated on facts independent of her suspension and termination. Instead, she relied primarily on *Kremer v. Chemical Construction Corp.*, 456 U.S. 461 (1982), to claim that the prior proceeding "deprived her of sufficient opportunity to be heard on her discrimination, retaliation[,] and

due process" claims. *See* ECF No. 71 at 15–21.

The only other legal basis Morales advanced in opposing dismissal of Count Five relies on her misinterpreting *Bostock v. Clayton County*, 590 U.S. 644 (2020). Specifically, she responded to the City's motion by averring that her title VII claims were "not foreclose[d]" because "a jury could still find . . . pretext[ual]" OIG's legitimate and non-discriminatory reason for firing her (i.e., the iPhone-related violation). ECF No. 71 at 18.

Morales's district court filings therefore show that she never made that court aware that an independent factual basis underlies Count Five. If anything, her responses affirmatively suggest the opposite by treating the facts underlying Count Five and her wrongful-termination claims as *one and the same*. After all—if Morales had actually believed that Count Five was entirely separate all along—why would she even bother averring that she could succeed on her title VII claims only if a jury found pretextual the legitimate reason for her termination? *See* ECF No. 71 at 18.

No wonder the district judge, in granting summary judgment, remarked that "[t]he parties d[id] not dispute that all of Plaintiff's claims asserted in state and federal court arise from Plaintiff's suspension and termination by the OIG." ECF No. 66 at 6.

Morales is making a last-ditch, Hail Mary attempt to save her case. That much is plain as day. And just as obvious is the result that must follow: Count Five is forfeited "because a contention not raised before the district court cannot be asserted for the first time on appeal." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 291 (5th Cir. 2019) (cleaned up) (Higginson, J.).

In concluding to the contrary, the majority buys in to Morales's tactical sleight-of-hand—hook, line, and sinker. The fact of various factual allegations "littered throughout" the complaint, O.A. at 10:29–50, is hardly a substitute for Morales's burden of "present[ing] the issue face up and

squarely in the trial court," *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 402 (5th Cir. 2022) (cleaned up).

As already noted, in responding to motions for summary judgment, Morales *never* explained that Count Five was supported by factual allegations wholly independent of her suspension and termination. Further, *never once* mentioned in either response was the allegation (1) that she was denied "a request for a five-percent pay increase following her attaining a particular certification" or (2) that "she was required to maintain hours for her certifications, but her male colleagues were not." Op. at 16.

Further still, *not once* did Morales's response to OIG's motion for summary judgment connect her (3) "receiv[ing] a letter of reprimand for not timely entering her hours in Wingswept" with the cause of action in Count Five. That allegation was only partially mentioned in discussing factual background to bolster her claim that she was rarely disciplined. *See* ECF No. 62 at 1–2. Indeed, all Morales said in her filing was that "she received a letter of reprimand for failure to timely enter hours into a time keeping program." ECF No. 62 at 2. Notice what's missing? Any mention whatsoever that her male colleagues were not reprimanded for failing to do the same. *See* Op. at 16.

So, at most, the majority identifies three allegations of sex-based disparate treatment that were "included only as part of a beginning point of the narrative that led to" nothing other than Morales's wrongful-termination claims. *M.D.C.G. v. United States*, 956 F.3d 762, 770 (5th Cir. 2020). None of the allegations was tied to Count Five, and none of the briefs in response avers that Count Five relied on facts independent from her suspension and termination. *See id.* at 770–71.

"Thus, we can only but conclude" that Morales's claim on Count Five "has been waived." *Id.* at 771. No matter Count Five's merits, Morales has

"waived them by failing to . . . press and not merely intimate the argument during the proceedings before the district court." *Id.* at 770 (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994)).

## II.

Now, assume, *arguendo*, that forfeiture does not apply. *But see supra* part I. Count Five still fails.

The majority misinterprets Morales's complaint when it purportedly identifies three instances where the Third Amended Complaint pleaded sex-based disparate treatment. *See* Op. at 16. None supports a disparate-treatment claim, for all were pleaded as retaliatory acts that resulted in her suspension and termination.

The timeframes established in the Amended EEOC Charge and Third Amended Complaint unequivocally show that Morales viewed those three instances purely as retaliatory conduct. In her EEOC Charge, Morales described OIG's conduct following her submission of an internal complaint "[i]n or around late 2018" as a "continuing action" of "retaliation." ECF No. 62-5 at 5. That description comports with paragraph 36 of her Complaint, in which she alleged that the incidents that occurred "after [she] lodg[ed] internal complaints" were acts of "retaliat[ion] . . . attempt[ing] to discredit her and harm her professional reputation and force her out of her job." ECF No. 53 at 6.

So, according to both her EEOC Charge and her Complaint, acts occurring after "late 2018" were *not* discrete and independently actionable instances of disparate treatment. Instead, they were part of a series of retaliatory acts intended to, *inter alia*, "force [Morales] out of her job." ECF No. 53 at 6.

That timeline wreaks havoc on the majority's position. Of the three instances referenced in its opinion, *all* were alleged to have occurred *after*

2018. The letter of reprimand was issued in September 2020, and the remaining two incidents occurred in May 2020 and January 2019. Thus, under Morales's own theory of the case, all three incidents were *not* acts of sex-based discriminatory treatment—but acts of *retaliation* taken "to force her out of her job." ECF No. 53 at 6.

Consequently, those three incidents factually enhance her claims of retaliation—and not disparate treatment. Morales has not sufficiently pleaded a *prima facie* case of the latter.[1] Count Five must fail.[2]

*    *    *    *    *

In sum, the majority gets a lot right. To its credit, it correctly recognizes that collateral estoppel precludes most of Morales's claims. But it nonetheless errs in vacating and remanding Count Five—a claim that is both (1) forfeited on appeal and (2) inadequately pleaded. The summary judgment should be affirmed in full, so I respectfully dissent.

---

[1] To state a claim for disparate treatment under the *McDonnell Douglas* burden-shifting framework, Morales bears the initial burden of demonstrating a *prima facie* case. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). That requires her to show, *inter alia*, that she "was subject to an adverse employment action." *Id.* (citation omitted). None is alleged here, so she fails "to state a claim to relief that is plausible on its face." *Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023) (cleaned up).

[2] We "can affirm the granting of summary judgment on any ground supported by the record, even where the district court granted summary judgment based upon erroneous reasoning." *Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 677 n.10 (5th Cir. 2023) (citation omitted).