# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 7, 2020

Lyle W. Cayce
Clerk

No. 20-40274

In re: In the Matter of Southern Recycling, L.L.C., *as Owner of* The M/V Viking and The Barge DBL 134, Praying for Exoneration from or Limitation of Liability

Southern Recycling, L.L.C.,

*Petitioner—Appellant*,

*versus*

Nestor Aguilar; Lorena Aguilar; Dora Mendieta, Individually, *as next friend of* J.L., III, *a minor*, *and on behalf of* The Estate of Jorge Loredo; and Jane Mary Loredo,

*Claimants—Appellees*,

*versus*

Maritime Chemists Services of the Coastal Bend of Texas, Incorporated; James J. Bell; Clean Water of New York, Incorporated; Independent Testing and Consulting, Incorporated,

*Third Party Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:19-CV-165

No. 20-40274

Before CLEMENT, HO, and DUNCAN, *Circuit Judges*.
EDITH BROWN CLEMENT, *Circuit Judge*:

After an accident during shipbreaking operations killed one worker and injured another, Southern Recycling, L.L.C., brought a petition for exoneration or limitation of liability under the Limitation of Liability Act. 46 U.S.C. § 30501, *et seq.* Claimants Nestor Aguilar (the injured worker), Lorena Aguilar, Dora Mendieta (individually, as next friend of Jorge Loredo's son, J.L. III, and on behalf of the estate of Jorge Loredo), and Jane Mary Loredo (collectively, "Claimants") moved to dismiss under Rule 12(b)(1) for lack of admiralty jurisdiction. Claimants argued that the barge Aguilar and Loredo had been working on was no longer a "vessel," and was instead a "dead ship." The district court agreed and dismissed for lack of subject matter jurisdiction. We AFFIRM.

## I. FACTS AND PROCEEDINGS

Southern Recycling contracted with Kirby Offshore Marine Operating, LLC ("Kirby") to purchase an articulated tug/barge unit ("ATB") for shipbreaking and recycling. The ATB comprised a tugboat, the M/V Viking, and an oceangoing tanker barge, DBL 134. The parties to the contract agreed that the vessels should be "cleaned of all chemicals, petroleum products, and sludge," so Kirby hired a contractor to clean the vessels. Kirby then transported the ATB from New York to the International Shipbreaking Limited, L.L.C. ("ISL") shipyard in Brownsville, Texas.

ISL, which is an affiliate of Southern Recycling and had custody of the ATB for shipbreaking, began to conduct preliminary shipbreaking activities, including removing deck plates, cutting "small doors" in the cargo tanks, and making cuts to the bow of the barge. ISL workers also began to remove pipes that were part of a heating coil system in the cargo tanks. Unfortunately, because the barge had been used to transport gasoline, other petroleum

products, and ethanol, the pipes contained an unknown amount of gasoline. While Aguilar and Loredo were cutting through one such pipe, a spark ignited a pocket of gasoline vapors, causing an explosion and fire that killed Loredo and severely injured Aguilar. Claimants sued for damages in Texas state court. Shortly thereafter, Southern Recycling brought this suit for limitation or exoneration under the Limitation of Liability Act.

"The Limitation of Liability Act does not confer jurisdiction upon federal courts." *Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 115 (5th Cir. 1992) (per curiam). Instead, courts turn to 28 U.S.C. § 1333(1), which confers admiralty jurisdiction "exclusive of the courts of the States." Admiralty jurisdiction can only attach for Limitation Act purposes when the structure at issue is a "vessel." 46 U.S.C. § 30502. Claimants argued that, because DBL 134 was being broken for scrap when the accident happened, it was a "dead ship"—not a vessel—and the court was without subject matter jurisdiction to hear the limitation claim. In the alternative, Claimants argued that the district court should dismiss under Rule 12(b)(6) or grant summary judgment under Rule 56 for failure to state a claim upon which relief could be granted for the same reason (that the Limitation Act applies only to vessels).

Southern Recycling noted that DBL 134 is still floating in the Brownsville Shipyard and had even been moved since the accident (albeit within the ISL facility). Southern Recycling contended that the cuts were minor and preparatory only, and that DBL 134 retained the essential characteristics of a vessel—including that it still floats. The district court, however, considered photographs of the barge submitted by the parties, including one that depicted "a **gaping hole open to the sea** down to or below its waterline." The district court concluded in a brief opinion that DBL 134 was a dead ship, not a vessel, that it lacked subject matter jurisdiction, and that the motion to dismiss should be granted. Southern Recycling timely appealed.

## II. Standard of Review

"We review a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) de novo," applying the same standard as the district court. *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (citation omitted). A district court may dismiss a case under Rule 12(b)(1) based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quotations omitted). Where, as here, the district court has expressly relied on its resolution of disputed jurisdictional facts, "those findings are reviewed for clear error." *Robinson v. TCI/US W. Commc'ns, Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

The burden of proving subject matter jurisdiction lies with the party asserting jurisdiction, and it must be proved by a preponderance of the evidence. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) ("The plaintiff must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence.") (citation omitted).

"We review evidentiary rulings," including both denial of an evidentiary hearing and denial of a request for discovery, "for abuse of discretion." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (citations omitted).

## III. Discussion

Southern Recycling argues first on appeal that the district court applied an inadequately deferential standard of review and should have applied a standard more akin to Rule 12(b)(6) or Rule 56; that is, that the district court should have looked either to the pleadings alone or to the pleadings supported only by undisputed facts. Southern Recycling also contends that the district court substantively erred in its analysis of DBL 134.

Because DBL 134 still floats and has been moved on navigable waters since the accident, Southern Recycling argues that it remains a vessel. Finally, Southern Recycling asks us, in the alternative, to find the district court erred in denying Southern Recycling's request for further discovery and to remand.

## A.

We address first Southern Recycling's argument regarding the standard of review. The rule is that courts may resolve disputed jurisdictional facts to decide a 12(b)(1) motion, and a district court that does so is entitled to deference unless the decision is "clearly erroneous." *Williamson v. Tucker*, 645 F.2d 404, 413–14 (5th Cir. 1981). There is, however, an exception to this rule. Citing *M.D.C.G. v. United States*, Southern Recycling argues that "when the issue of jurisdiction is intertwined with the merits, district courts should 'deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56.'" 956 F.3d 762, 768–69 (5th Cir. 2020) (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004)). Because the existence of a vessel is a precondition for the Limitation Act to apply, 46 U.S.C. § 30502, Southern Recycling argues that the issue is intertwined with the merits of its limitation claim and that it is entitled to the heightened Rule 12(b)(6) or Rule 56 standards.

Southern Recycling had submitted an affidavit by ISL's president, Chris Green, claiming that "ISL made no cuts to the DBL134's hull below the fully loaded waterline and did not otherwise alter the integrity of the DBL134's hull. In other words, DBL134 still floats." Southern Recycling argues now that this proves DBL 134 remains a vessel, or at least that there are genuine disputes of material fact that preclude summary judgment under the Rule 56 standard. FED. R. CIV. P. 56(a). Because the district court expressly decided the motion to dismiss based on resolution of disputed facts under Rule 12(b)(1), we must first decide whether it was correct to do so.

There is no clear test for when the "intertwined with the merits" exception applies. Southern Recycling argues that it should apply any time the jurisdictional ruling could be dispositive of the claim as a whole. Southern Recycling cites dicta in *Ramming v. United States* that a dismissal for lack of subject matter jurisdiction "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction" as implying that the usual 12(b)(1) rule only applies where a party can take their claim elsewhere. 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citation omitted). This is not the correct implication to take from *Ramming*, and we decline to adopt "dispositive" as the test for when the exception applies.

Following the above comment, the *Ramming* court affirmed dismissal of a suit as time-barred where timeliness was a jurisdictional requirement. *Id*. at 165. In other words, *Ramming* did *not* leave the plaintiff with an alternative forum to pursue his case; the jurisdictional ruling ended it. Although questions about when a claim has accrued typically present a pure (or nearly pure) question of law, both the district court and this court weighed competing fact narratives to make findings about when Ramming should have been on notice that his claim had accrued. *See id*. at 163; *Cloud v. United States*, 126 F. Supp. 2d 1012, 1019–20 (S.D. Tex. 2000); *see also Gonzalez v. United States*, 284 F.3d 281, 287–91 (1st Cir. 2002) (resolving a "*nearly* pure" question of law about when a claim accrued by reference to affidavits, depositions, and other evidence outside the pleadings, before dismissing case for lack of jurisdiction as time-barred under the FTCA) (emphasis added).

To determine whether the exception applies, we look instead to the *extent* to which the jurisdictional question is intertwined with the merits, considering such factors as whether the statutory source of jurisdiction differs from the source of the federal claim and whether judicial economy favors early resolution of the jurisdictional issue. We have also noted that "where the jurisdictional issue can be extricated from the merits and tried as

a separate issue the findings of the district court must be accepted unless they are clearly erroneous." *Williamson*, 645 F.2d at 416 n.10 (citing *McLain v. Real Est. Bd. of New Orleans, Inc.*, 583 F.2d 1315, 1322–23 (5th Cir. 1978)).

We begin with a factor emphasized by our colleagues on the First and Tenth Circuits: whether the court's subject matter jurisdiction is derived from the same statute as the cause of action. *See, e.g.*, *Gonzalez*, 284 F.3d at 287 ("A jurisdictional issue is intertwined with the merits where the court's subject matter jurisdiction depends upon the statute that governs the substantive claims in the case."); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) ("We have stated that subject matter jurisdiction and the merits are considered intertwined when subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case." (cleaned up)).

Here, jurisdiction depends on federal courts' general admiralty jurisdiction, as granted in 28 U.S.C. § 1333(1) and authorized in Article 3, section 2, of the U.S. Constitution, whereas Southern Recycling's claim depends on the Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.* This implies that "vessel" is best understood as an antecedent jurisdictional question. That is, a court must establish that it has admiralty jurisdiction—in this context, because a vessel is involved—to "satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413. The existence of a vessel in the Limitation Act is better understood to be assumed—since it was required by the antecedent jurisdictional question—than to be a separate element of a limitation claim.

We consider next whether "the jurisdictional issue can be extricated from the merits and tried as a separate issue." *Id.* at 416 n.10. Where vessel status has been addressed in prior cases, it is almost always treated as an independent inquiry. *See, e.g.*, *Lozman v. City of Riviera Beach*, 568 U.S. 115,

130 (2013) (floating home is not a vessel); *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 492 (2005) (dredge is a vessel); *Baker v. Dir., Office of Worker's Comp. Programs*, 834 F.3d 542, 547 (5th Cir. 2016) (stationary oil platform is not a vessel). This case is complicated by factual disputes about the physical characteristics of DBL 134 (e.g., whether the hole in the bow is above or below the waterline), but Southern Recycling puts forward no reason why determining basic physical characteristics of the barge should be too complex to extricate from the remainder of a complex limitation action.

By contrast, in the cases Southern Recycling cites,[1] the alleged jurisdictional issues are consistently so intertwined with the underlying causes of action as to be inextricable, such as FTCA cases in which the issue is whether a government employee was "acting within the scope of his employment when he committed [a] tort[ ]." *M.D.C.G.*, 956 F.3d at 768; *see e.g.*, *Montez*, 392 F.3d at 149 (same). The Supreme Court dealt with a similarly inextricable merits issue in *Bell v. Hood*, 327 U.S. 678 (1946). The question was whether the Constitution implied a cause of action for damages when federal officials violated a plaintiff's Fourth and Fifth Amendment rights. *Id.* at 683. *Bell* predated *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), so it was undecided whether the Constitution implied such a remedy. *Bell*, 327 U.S. at 684. The legal issue was *identical* to the key issue of law (that is, the merits issue): is there a cause

---

[1] We note that several of the cases Southern Recycling relies on are simply inapposite. For example, Southern Recycling cites to *Williams v. Reeves* for the proposition that a "dismissal for lack of jurisdiction will not be affirmed unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." 954 F.3d 729, 734 (5th Cir. 2020) (cleaned up). However, the *Williams* court was looking at a Rule 12(b)(1) motion that was decided on the pleadings, not on the resolution of disputed fact issues. *Williams v. Bryant*, No. 3:17-cv-404-WHB-LRA, 2018 WL 8996382, at *1 (S.D. Miss. Mar. 28, 2018). When a motion to dismiss is decided solely on the pleadings, the plaintiff is entitled to a generous construction similar to a 12(b)(6) dismissal.

of action for money damages when federal officials violate the Fourth and Fifth Amendments? *Id*. Here, the jurisdictional issue (is DBL 134 a vessel?) is readily extricable from the primary merits issues.

The ability to extricate the jurisdictional issue is closely related to considerations of judicial economy, which also support treating vessel status as an antecedent jurisdictional inquiry. This court has explained the exception to the normal 12(b)(1) rule by noting that "no purpose is served by indirectly arguing the merits" and that "[j]udicial economy is best promoted when the existence of a federal right is directly reached." *Williamson*, 645 F.2d at 415. The question of whether DBL 134 is a vessel, if treated as an antecedent inquiry, promotes judicial economy.

A limitation action, at its core, is not about whether a structure is or is not a vessel. Rather, it's about consolidating what could otherwise be a multiplicity of separate actions following a maritime incident into a single forum "for determining (1) whether the vessel and its owner are liable at all; (2) whether the owner may in fact limit liability to the value of the vessel and pending freight; (3) the amount of just claims; and (4) how the funds should be distributed to the claimants." Thomas J. Schoenbaum, 2 Admiralty & Mar. L. § 15:6 (6th ed. 2018). We could add to that questions about whether the incident occurred without the "privity and knowledge of the owner," 46 U.S.C. § 30505, and whether there is a dispute as to the value of the vessel. This case involves disputes between Southern Recycling and Claimants, claims and counterclaims among Southern Recycling, Kirby, and Clean Water of New York (the company hired to clean DBL 134), a motion for preliminary injunction and rescission of the contract between Southern Recycling and Kirby, and numerous other claims and counterclaims among various parties to this action—none of which, at their core, center on whether DBL 134 was or was not a vessel. In other words, a limitation action is extremely complex; the vessel inquiry is not. Judicial

economy is served by addressing the antecedent question of jurisdiction at the outset, prior to the remaining merits inquiry.

Because the jurisdictional question of whether DBL 134 is a vessel is antecedent to the merits in a limitation action, rather than intertwined with the merits, the district court did not err in applying the usual Rule 12(b)(1) standard and resolving factual disputes about the physical characteristics of the structure. We review findings of fact for clear error and will only reverse if, "on the entire evidence," we are "left with the definite and firm conviction that a mistake has been committed." *Flores*, 936 F.3d at 276.

B.

We turn now to whether the district court erred in determining that DBL 134 was no longer a vessel. Southern Recycling submits that, when we conduct this analysis, it would be inappropriate for us to consider any evidence in the record that was submitted after the briefs and replies related to Claimant's 12(b)(1) motion. This would include filings in the record associated with Southern Recycling's motion for preliminary injunction against Kirby, since these were submitted over a month after the 12(b)(1) filings. Because (1) the district court had the opportunity to review these materials, (2) Southern Recycling offers no authority to support its argument, (3) Southern Recycling had an opportunity to reply (and did reply) to Kirby's evidence, (4) Southern Recycling does not allege that any of the photos or technical materials are inaccurate or misleading, and (5) this court may "affirm on any ground supported by the record, including one not reached by the district court," *Ballew*, 668 F.3d at 781, we decline Southern Recycling's invitation to ignore evidence.

To understand whether a structure is a vessel, the Supreme Court directs us to the definition of a vessel Congress provided in 1 U.S.C. § 3: "The word 'vessel' includes every description of watercraft or other artificial

contrivance used, or capable of being used, as a means of transportation on water." *See Stewart*, 543 U.S. at 489. The Supreme Court has emphasized that "the term 'contrivance' refers to something contrived for, or employed in contriving to effect a purpose." *Lozman*, 568 U.S. at 123 (cleaned up). Thus, the test for whether a structure is a vessel is whether "a reasonable observer, looking to the [structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Id.* at 121. Courts should "avoid subjective elements, such as owner's intent," and should consider only "objective evidence of a waterborne transportation purpose." *Id.* at 128.

There is no question that an oceangoing cargo barge is a vessel. Nor can there be any doubt that Southern Recycling's subjective intent to dismantle DBL 134 for scrap is insufficient to render it a dead ship.[2] *See Blake Marine Grp., LLC v. Epic Ala. Recyclers, LLC*, No. 19-0468-CG-B at *4 (S.D. Ala. Dec. 30, 2019) ("The fact that it was towed as a 'dead ship' and that EPIC had contractually agreed not to use the AMOS RUNNER to engage in any maritime commerce does not change the physical attributes and behavior of the structure.") DBL 134, at a minimum, *was* a vessel when it arrived at ISL's shipyard in Brownsville. The question is whether it had become a dead ship yet when the accident happened.

To determine whether DBL 134 was a dead ship, we ask whether it "had or had not been withdrawn from navigation and maritime commerce." *Amoco Oil v. M/V Montclair*, 766 F.2d 473, 477 (11th Cir. 1986). Whether a

---

[2] We note here Southern Recycling's argument that the district court took insufficient notice of an affidavit by Southern Recycling's Vice President, Douglas Higginbotham. The affidavit discusses the contract between Southern Recycling and Kirby, the accident, and Southern Recycling's subjective intent t return DBL 134 to Kirby. Because subjective intent is irrelevant to whether DBL 134 was a vessel or a dead ship, the district court did not err in disregarding Mr. Higginbotham's affidavit.

No. 20-40274

vessel has been withdrawn from navigation is a question of the physical characteristics of and modifications to the structure. *See* Thomas J. Schoenbaum, 1 Admiralty & Mar. L. § 3:6 (6th ed. 2018) ("Only if a ship is so changed in function that is has no further navigation function will it be considered to have lost vessel status.").

The plaintiff bears the burden to "prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence," *Ballew*, 668 F.3d at 781 (citation omitted), but DBL 134 was unquestionably a vessel when it arrived at ISL's facility. Thus, where the line between "vessel" and "dead ship" is in dispute, the party challenging vessel status must show evidence of structural changes sufficient to give rise to a question of whether a vessel's function has been so altered as to withdraw it from navigation. Then, the party asserting jurisdiction bears the burden to demonstrate that a structure retains sufficient navigation function to remain a vessel.

The district court cited "photographs provided by Claimants" showing "a **gaping hole open to the sea** down to or below [DBL 134's] waterline" and information indicating that "another large opening had been cut into the bottom side of the liquid cargo tank and large holes had been cut through the deck." Claimants add that, in response to Southern Recycling's motion for a preliminary injunction requiring Kirby to take possession of DBL 134 and remove it from ISL's facility, Kirby submitted additional photos of DBL 134, technical manuals and diagrams, and several affidavits, including that of Christopher Nash, the former Captain of the M/V Viking.

The technical manuals indicate that the waterline, when the barge is fully loaded, is as little as four feet, nine inches (4'9") below the deck in the winter, four feet, two and a half inches (4'2.5") in summer, and three feet, eight inches (3'8") in tropical waters. Contrary to Southern Recycling's

claim, the photographs do not depict a minor preparatory cut to the bow above "the fully loaded waterline [that] did not otherwise alter the integrity of the hull." To the contrary, both the image supplied by Claimants in their motion and the images supplied by Kirby clearly depict, as the district court found, "a gaping hole open to the sea."

The photographs make clear that, at the time of the accident, a large portion of the bow had been severed cleanly off the front, leaving a hole that spans the barge from starboard to port, and is approximately one quarter as deep as it is wide. Although the record does not disclose a precise measurement, the cut is clearly about ten to twenty feet deep. The technical specifications (the accuracy and authenticity of which Southern Recycling does not dispute) indicate a fully loaded waterline 3'8" to 4'9" below the deck, depending on season. The cut, therefore, *visibly* extends to well below the fully loaded waterline.

The district court also had the benefit of a photo submitted by Southern Recycling in its opposition to Claimant's motion to dismiss, depicting DBL 134 as it was prior to any shipbreaking work. The portion of the bow that is missing from Claimants' picture is visible in Southern Recycling's picture, providing the district court (and this court) an adequate comparison to conclude that the portion of bow that had been severed was significant and sizeable. Further, the photo shows how the front of the barge had been fully enclosed, rather than wide open, allowing a reasonable observer to conclude that, should this formerly ocean-going barge be taken back out into open waters, it would be at a substantially increased risk of taking on water through the gaping hole in its bow. In weighing these photographs against Southern Recycling's visibly false assertion that "DBL 134's hull is intact" and its misleading implication that the only preparatory work done was "the minor removal of piping and deck plates to access same," or against Mr. Green's visibly implausible contention that no cuts

were made below the fully loaded waterline, the district court did not clearly err in concluding that "DBL 134 could not navigate over water."

Southern Recycling contends that, notwithstanding the district court's conclusion about the gaping hole in the front of the barge, DBL 134 could not be a dead ship because it still floats, and has even been moved on the Brownsville Ship Channel (from one part of ISL's facility to another).[3] The conclusion that the hole is "down to or below the waterline," Southern Recycling argues, must be false because, if true, the barge would sink.

But a structure is not a vessel merely because it is "capable of floating, moving under tow, and incidentally carrying even a fair-sized item or two when [it] do[es] so." *Lozman*, 568 U.S. at 121. The physical structure of a vessel must give a reasonable observer evidence that the structure is "designed to a practical degree for transportation on water"—that is, transportation of persons or things over water. *Id.* at 122 (cleaned up). Even if Claimants' evidence had been insufficient to prove that DBL 134 could no longer safely navigate over water, it was at least enough to show that major structural changes had been made and to implicate Southern Recycling's burden to show that DBL 134 was a vessel—that is, to show that DBL 134 could still serve a useful purpose. Southern Recycling failed to do so.

In its motion for a preliminary injunction against Kirby, Southern Recycling alleged that "DBL 134 [is] a ticking bomb awaiting one spark to ignite it." The barge is so unsafe that Southern Recycling is, "quite frankly, lucky that another accident has not occurred," and when an expert discovered the condition the barge was in he had to "immediately order[ ] all

---

[3] Southern Recycling makes much of the fact that the barge was moved four times within the ISL facility since its arrival. This is immaterial—Southern Recycling only alleges clearly that it moved the barge once since the accident and identifies no other moves made *before* Southern Recycling cut a large hole in DBL 134's bow.

personnel to evacuate the DBL 134." Southern Recycling does not allege that the barge could carry people over water; to the contrary, it is unsafe for personnel to board.

Southern Recycling also alleges that its preparatory work has included "cutting small 'doors' in the cargo tanks." This implies that it can no longer carry the liquid cargo for which it was designed. To be sure, a limitation on what a vessel can do does not necessarily render it a dead ship. For example, the heating pipe system involved in the accident had been deactivated since 2012, limiting the types of cargo DBL 134 could transport; it was, nonetheless, still a vessel because it could carry different cargo. Now, however, the tanks have been cut open, the barge is unsafe for humans to board, and there is a large hole in the bow that visibly prevents the barge from being loaded to capacity (if *any* loading capacity remains, Southern Recycling does not say so). The standard is permissive, and transporting people or things over water need not be a vessel's *primary* purpose—in *Stewart v. Dutra Constr. Co.*, it was enough that a dredge carried "machinery, equipment, and crew over water." 543 U.S. at 492. But Southern Recycling has failed to identify *any* transportation purpose that DBL 134 could serve or *anything* that it could carry over water.

Southern Recycling points to objective characteristics like "a raked hull, bow, deck, ten cargo tanks, etc." It contrasts these characteristics against the floating home that was held not to be a vessel in *Lozman* because it had an unraked hull, nonmaritime livings quarters, etc. 568 U.S. at 121–22. However, a reasonable observer would not see a raked hull and bow, but a severed bow and part of a raked hull—with a gaping hole in it. A reasonable observer would note that much of the deck has been removed, and the cargo tanks can no longer hold a cargo. A reasonable observer would not see a vessel ready to transport persons or cargo, but a dead ship in the process of being scrapped.

Southern Recycling failed to demonstrate that, based on its physical characteristics, DBL 134 had not been removed from navigation. The district court did not err in concluding that DBL 134 was a dead ship. It lacked subject matter jurisdiction and properly dismissed under Rule 12(b)(1).

## C.

Because Southern Recycling had requested and been denied further discovery, it now requests, in the alternative to a reversal on the merits, that we remand for further factual development. We decline to do so. A plaintiff should be ready to present some amount of basic jurisdictional evidence, or at least raise an inference that further discovery will uncover such evidence, from the outset of litigation. "[A] 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted).

Although a ruling that decides disputed facts should ordinarily be subject to an evidentiary hearing, "an evidentiary hearing is not required." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 173 (5th Cir. 1994) (citation omitted). "The party seeking discovery bears the burden of showing its necessity," *Freeman*, 556 F.3d at 341, but Southern Recycling did not make any compelling showing that it would need time to conduct discovery to explain away the hole in the bow of DBL 134. The bid package for DBL 134 included engineering drawings. Southern Recycling's affiliate, ISL, had custody of the barge. Yet Southern Recycling made no effort to show why it could not take pictures of its own to explain away the hole in the bow or provide its own measurements of the depth of the hole compared to the waterline based on the engineering drawings in response to Claimants' evidence.

"It hardly bears repeating that control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable." *Williamson v. U. S. Dep't of Agric.*, 815 F.2d 369, 382 (5th Cir. 1987) (citation omitted). Southern Recycling has not shown why it needed further discovery or what material evidence further discovery could have produced that was not already available to it, so Southern Recycling has not shown that the district court's ruling was arbitrary or clearly unreasonable.

## IV. Conclusion

The precise moment a ship is withdrawn from navigation can be a difficult, fact-intensive inquiry. We are fortunate that we need not decide precisely how many rotted planks must be removed before Theseus's ship ceases to be Theseus's ship. When her bow has been severed, leaving a gaping hole open to the sea, her cargo tanks have been rendered inoperable, and the party asserting jurisdiction is unable even to allege any types of people or things that she is capable of carrying over navigable water, we can readily conclude that DBL 134 is no longer a vessel.

AFFIRMED.