# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 21, 2025

Lyle W. Cayce
Clerk

No. 24-40679

_____

T&W Holding Company, L.L.C.; Palapas, Incorporated;
It's Five O'Clock Here, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

City of Kemah, Texas,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:22-CV-7

_____

Before Higginson, Willett, and Engelhardt, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

This case concerns the permitted uses of Plaintiff–Appellants' property in the City of Kemah, Texas ("the City"). Plaintiffs contend that the district court erred by granting the City's motion to dismiss, disposing of some claims on justiciability grounds and others on their merits. For the reasons discussed below, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

No. 24-40679

I.

Plaintiff T&W Holding Co., L.L.C. ("T&W"), owns a property in Kemah, Texas, that includes a four-story building with a bar operated by Plaintiff Palapas, Inc. ("Palapas") and a food truck operated by Plaintiff It's Five O'Clock Here, L.L.C. ("Five O'Clock"). This dispute arises from two distinct events on Plaintiffs' property. First, in July 2021, the City issued a zero-occupancy notice for the building. Second, in October 2021, the City towed Five O'Clock's food truck.

Plaintiffs allege that Palapas has run a bar in the first and second floors of T&W's building for about 20 years. According to Plaintiffs, in 2004, the City granted a change of occupancy permit for use of the third floor as a bed and breakfast, and since then, the third floor has been used for short- and long-term residential rentals.[1] The fourth floor is also used for residential rentals.

In May 2021, Matthew Placek, Plaintiffs' owner, applied for a short-term rental permit to continue using the third and fourth floors for residential purposes. The City put the application on hold and told T&W that it needed to apply for a change of occupancy first. T&W then applied for a multi-use certificate of occupancy. A contractor inspected the property on July 8, 2021, to determine whether it was up to code for residential use. Kemah Chief Building Official and Fire Marshal Brandon Shoaf informed Placek that the building failed the inspection due to "a multitude of life safety hazards in the main structure." Shoaf notified Placek that he had issued a zero-occupancy notice for the entire building, which prohibited anyone except Placek and

_____

[1] The City argues that the building has never had a residential certificate of occupancy and that the third floor was only authorized to operate as a consignment shop. We do not resolve this factual dispute at this stage.

No. 24-40679

contractors working on repairs from being in the building. Shoaf told Placek that the zero-occupancy status would last until the building passed a new inspection. Plaintiffs allege that the zero-occupancy restrictions immediately deprived them of "substantially all economic use" of the building.

Simultaneously, the City took issue with the food truck on Plaintiffs' property. Since August 2020, Five O'Clock had been running a food truck there. In April 2021, Shoaf notified Palapas's manager, Walter Wilson, that Plaintiffs could not park a food truck at the property for longer than 24 hours. About a week later, the City posted a "red tag" notice at the property, stating that there was no permit on file for the food truck, and issued a stop work order. Both the notice and the order required the food truck to be removed by 11:00 a.m. the next day. Five O'Clock ceased food truck operations but did not remove the truck.

On October 8, 2021, similar notices were posted on the food truck. The notices stated that the truck was parked illegally and had to be moved by 7:00 a.m. on October 11. On October 11, 2021, the City removed the food truck from Plaintiffs' property. Five O'Clock challenged the towing in a state Justice of the Peace Court. The court found that there was probable cause to tow. Five O'Clock appealed that determination but later nonsuited its appeal.

Plaintiffs sued the City under 42 U.S.C. § 1983, bringing four counts related to the zero-occupancy notice and the food truck towing.[2]

---

[2] The operative complaint—Plaintiffs' Second Amended Complaint—does not separate claims regarding the use of T&W's building and claims regarding the food truck into different counts. The district court characterized Plaintiffs' substantive allegations as (1) takings, due process, and equal protection claims related to the zero-occupancy notice on T&W's building; and (2) takings, due process, and equal protection claims related to Five O'Clock's food truck. To the extent Plaintiffs assert claims related to other permits or certificates for the building—e.g., the short-term rental permit application—we understand them to fall under the district court's "zero-occupancy notice" claims

No. 24-40679

Substantively, Plaintiffs alleged takings, due process, and equal protection claims under the U.S. and Texas constitutions. In their final count, Plaintiffs requested declaratory judgment under both federal and state law.

The City moved to dismiss, primarily arguing that the district court lacked subject matter jurisdiction. The City contended that Plaintiffs' takings claims were not ripe because "the City has not made any final decision denying a structure permit, short-term rental permit, or a certificate of occupancy." Citing Kemah Code § 1-14(e),[3] the City argued that, to receive a justiciable final decision, T&W first must attempt to bring the units up to code and allow the property to undergo another inspection "to allow issuance of a residential certificate of occupancy." Should City staff deny the application at that point, T&W would then need to appeal to Kemah's City Council ("City Council"). If City Council rendered an adverse decision, T&W finally could then challenge that decision in district court. The City further argued (1) that Plaintiffs' due process and equal protection claims regarding the zero-occupancy notice were not ripe; (2) that Plaintiffs' food truck claims were not justiciable; and (3) that even if any claims were justiciable, Plaintiffs had failed to state a claim for relief.

The magistrate judge recommended granting the City's motion to dismiss in full. First, the magistrate judge concluded that the takings, due process, and equal protection claims related to the zero-occupancy notice were not ripe because the City had not yet made a "final decision" on the

---

section. For simplicity, and because the parties do not object to the district court's characterization, we adopt the same structure here.

[3] *See* Kemah, Tex., Code of Ordinances ("Kemah Code") ch. 1, § 1-14(e) (2025) (listing conditions for City staff to issue permits and certificates; reserving the right for City Council to review decisions denying certificates and permits; and indicating that if City Council does not act within 30 days of an application for review, any objection from the council is "deemed waived").

notice. Rather than analyzing Kemah Code § 1-14(e), the magistrate judge ordered briefing on a different provision, Kemah Code § 2-93, which requires that a plaintiff complain to City Council as a condition precedent to suing the City. The magistrate judge then determined that because Plaintiffs had not appealed the zero-occupancy notice to City Council, as required by Kemah Code § 2-93, their claims about the notice were not ripe. Second, the magistrate judge decided that the food truck claims were justiciable but failed on their merits. Finally, the magistrate judge found that without a surviving substantive cause of action, Plaintiffs' declaratory judgment claims must be dismissed. The district court adopted the magistrate judge's memorandum and recommendation in full (over Plaintiffs' objections) and granted the motion to dismiss.[4] Plaintiffs timely appealed.

## II.

Generally, we review *de novo* the district court's grant of a motion to dismiss under Rules 12(b)(1) and 12(b)(6), "applying the same standard used by the district court." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Relevant here, "[a] district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). "The burden of proving subject matter jurisdiction lies with the party asserting jurisdiction, and it must be proved by a preponderance of the evidence." *Id.* Where facts relevant to jurisdiction are disputed, the district

---

[4] We note that it is unclear whether the magistrate judge and district court adequately considered Plaintiffs' state law claims apart from their federal constitutional and declaratory judgment claims, but the parties do not raise that issue on appeal.

No. 24-40679

court can weigh the evidence and "resolve disputed issues of fact to the extent necessary to determine jurisdiction." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). We review jurisdictional findings of fact for clear error. *In re S. Recycling*, 982 F.3d at 379.

## III.

Plaintiffs' appeal presents three separate questions: (1) whether Plaintiffs' zero-occupancy notice claims are ripe; (2) whether Plaintiffs adequately stated any claims related to the food truck towing; and (3) whether the district court erred by dismissing Plaintiffs' declaratory judgment claims. For the reasons explained below, we hold that Plaintiffs' zero-occupancy notice claims are ripe and remand for the district court to consider their merits. We separately hold that Plaintiffs have waived their food truck claims by inadequately briefing them on appeal. Finally, we reinstate Plaintiffs' declaratory judgment claim as it relates to their zero-occupancy notice claims.

## A.

We begin with Plaintiffs' zero-occupancy notice claims. In July 2021, Shoaf determined that T&W's building had various safety hazards and issued a zero-occupancy notice. Since then, Plaintiffs have been entirely unable to use the building. Plaintiffs allege that this deprivation is an unconstitutional taking and violates their due process and equal protection rights under both federal and state law. The district court dismissed Plaintiffs' takings claim as unripe because City Council had not issued a "final decision" on the zero-occupancy notice. Because Plaintiffs' due process and equal protection claims would require "similar factual development," the district court held that those claims were unripe as well. We disagree.

"When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the

6

government has reached a 'final' decision." *Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 475 (2021) (per curiam) (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 737 (1997)). "After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Id.* But "[t]he finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." *Id.* at 478 (cleaned up). "[N]othing more than *de facto* finality is necessary." *Id.* at 479.

Moreover, it is well-established that there is no exhaustion requirement for § 1983 claims. As the Supreme Court has explained, § 1983 "guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials,'" and requiring a plaintiff to comply with state administrative processes to render a decision "final" would be "inconsistent with" that guarantee. *Id.* (quoting *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019)); *see also Knick*, 588 U.S. at 185 ("[E]xhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983." (cleaned up)); *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500–01 (1982) ("[T]his Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983 . . . .").

Here, the district court ignored the finality of the City's zero-occupancy decision and imposed an impermissible exhaustion requirement on Plaintiffs' claims. Although not initially raised by the parties, the district court relied on Kemah Code § 2-93 in its ripeness determination. That provision creates a condition precedent to filing suit:

> No suit of any nature whatsoever shall be instituted or maintained against the city unless the plaintiff therein shall aver and prove that previous to the filing of the original petition the plaintiff applied to the city council for redress, satisfaction,

compensation, or relief, as the case may be, and that the same was by vote of the city council refused.

Kemah Code § 2-93. Based on this language, the district court held that any "final decision" sufficient to support a takings claim must come from City Council and that Plaintiffs had not followed City Council's formal appeal procedures.[5]

This conclusion is incompatible with § 1983 takings precedent. The City reached a sufficiently final position when the alleged taking occurred—specifically, when Shoaf issued the zero-occupancy notice. As soon as Shoaf posted the zero-occupancy notice, Plaintiffs lost all economic use of the building. Plaintiffs have now been without use of the building for four years. Even the City's counsel conceded as much at oral argument. This deprivation satisfies the *de facto* finality standard for ripeness. *See, e.g.*, *Pakdel*, 594 U.S. at 481 ("For the limited purpose of ripeness, however, ordinary finality is sufficient."); *Knick*, 588 U.S. at 190 ("The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner.").

The fact that the City may offer alternative routes for property owners to challenge zero-occupancy notices at the local level does not alter our analysis. Because a locality cannot impose an exhaustion requirement on a § 1983 claim, Plaintiffs' alleged disregard of the City's appeal procedures is not fatal, and the district court erred in holding otherwise. *E.g.*, *Pakdel*, 594

---

[5] According to the magistrate judge, the City "conceded that § 2-93 'makes only a final decision of the Kemah City Council a *final decision*,'" and Plaintiffs "conceded that the zero-occupancy notice is 'subject to [a] final decision by City Council.'" Nonetheless, because a city cannot impose an exhaustion requirement on a § 1983 claim, we find Kemah Code § 2-93 inapplicable here.

U.S. at 480 ("[A]dministrative 'exhaustion of state remedies' is not a prerequisite for a takings claim when the government has reached a conclusive position." (quoting *Knick*, 588 U.S. at 185)). The zero-occupancy notice deprived Plaintiffs of their property rights, sufficient to ripen their § 1983 takings claim.

The district court also held that Plaintiffs' due process and equal protection claims related to the zero-occupancy notice were not ripe because they would require "similar factual development" to the takings claim, meaning that Plaintiffs would need a final decision from City Council before they could file these claims. This holding was incorrect for the same reasons just discussed. Plaintiffs' due process and equal protection claims are also § 1983 claims, exempt from any state exhaustion requirements. *See, e.g.*, *Patsy*, 457 U.S. at 502 ("[E]xhaustion of administrative remedies in § 1983 actions should not be judicially imposed."); *Bowlby v. City of Aberdeen*, 681 F.3d 215, 222 (5th Cir. 2012) ("[E]xhaustion of state remedies is not required before a plaintiff can bring suit under § 1983 for denial of due process.").

Thus, we REVERSE in part the district court's order, insofar as it found Plaintiffs' zero-occupancy notice claims unripe, and REMAND for the district court to consider these claims in the first instance.

## B.

Next, we turn to Plaintiffs' claims regarding Five O'Clock's food truck. The district court dismissed these claims under Rule 12(b)(6). We find that Plaintiffs have waived these claims.[6]

---

[6] The City argues that *Rooker-Feldman* abstention applies, so Plaintiffs' food truck claims are not justiciable, and that Plaintiffs failed to state a claim related to the food truck. Because we find that Plaintiffs waived their food truck claims on appeal, we do not address the City's arguments.

"[A]rguments must be briefed to be preserved." *Price v. Digit. Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988). "'A party waives an issue if he fails to adequately brief it' on appeal." *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008) (quoting *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008)). "Merely mentioning a claim does not constitute a supported argument or adequate briefing." *Id.*

Plaintiffs do not specifically challenge any of the district court's rulings on their food truck claims in their principal brief on appeal. Instead, Plaintiffs merely list the federal and Texas constitutions' takings provisions, declare without any citations to case law that they have adequately pled their claims, and incorporate by reference their arguments regarding subject matter jurisdiction. In their reply brief, Plaintiffs engage with their towing claims in response to the City's arguments on the matter. But "[a]n argument first supported in a reply brief comes too late because the appellee is not entitled thereafter to respond," *id.* at 927, and Plaintiffs' responsive briefing still does not address any errors in the district court's order.

Without Plaintiffs pointing to any specific error by the district court on this issue, we find that Plaintiffs have waived their arguments regarding the food truck claims. Thus, we AFFIRM in part the district court's order, insofar as it dismissed Plaintiffs' claims regarding the City towing Five O'Clock's food truck.

## C.

Finally, Plaintiffs contend that the district court erred in dismissing their declaratory judgment claims. The district court dismissed Plaintiffs' request for declaratory relief because it dismissed all of Plaintiffs' substantive claims. Declaratory relief may be available on Plaintiffs' zero-occupancy notice claims, if the district court determines that any of those remaining claims succeed on their merits. Therefore, we REVERSE the district

No. 24-40679

court's ruling on Plaintiffs' declaratory judgment count only as to the zero-occupancy notice claims and AFFIRM the district court's ruling on Plaintiffs' declaratory judgment count as to the food truck claims.

## IV.

In accordance with the foregoing, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.[7] We AFFIRM the district court's dismissal of Plaintiffs' food truck claims, REVERSE its dismissal of Plaintiffs' zero-occupancy notice claims on ripeness grounds, and REMAND for the district court to consider the merits of Plaintiffs' zero-occupancy notice claims, including Plaintiffs' request for declaratory judgment.

---

[7] The City's motion to file a surreply, which was then filed on July 2, 2025, is GRANTED.