# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2026

Lyle W. Cayce
Clerk

No. 25-10233

Scott Reardon,

*Plaintiff—Appellant*,

*versus*

American Airlines, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-370

Before Barksdale, Willett, and Duncan, *Circuit Judges*.

Per Curiam:

At issue is whether this action under the federal Railway Labor Act by Scott Reardon against American Airlines, Incorporated, for retaliatory-termination was properly dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. AFFIRMED.

I

Reardon began working for American in 1996 at the Boston Logan Airport. He held the position of facilities mechanic from 2003 until his termination in 2023. During the events giving rise to this action, Reardon

was a union representative for the Transport Workers Union Local 591 (Union). American and the Union are parties to a collective bargaining agreement (CBA).

The CBA provides, *inter alia*, "a method for the prompt and equitable disposition of grievances[] and for the establishment of fair wages, hours and working conditions" for Union-represented employees. It also provides grievance and arbitration procedures for when: Union-represented employees "believe that they have been unjustly dealt with" or "provision[s] of [the CBA] ha[ve] not been properly applied or interpreted". These procedures require an employee to follow a series of steps to escalate a matter, ultimately enabling the employee to request review by the "System Board of Adjustment/Arbitration".

In early 2021, American received a report that Reardon stole food from American's Admirals Club in the airport. American investigated, interviewing several witnesses—including two alleged accomplices. It then interviewed Reardon, with a Union representative present, and he admitted to stealing from the Admirals Club. American terminated him and the alleged accomplices.

Reardon utilized the CBA's grievance process and, with the Union's consent, entered into a Last Chance Agreement (LCA) with American to restore his employment. The LCA provides: Reardon's actions gave American just cause for his termination; and American "complied with all provisions of the [CBA] between the Union and [American] with respect to [Reardon's] employment". The LCA further states: "[Reardon] and the Union understand and agree that any single incident of a violation of [American's] policies and procedures . . . during the term of this agreement will be just cause for [Reardon's] immediate termination". The LCA term was 24 months from Reardon's return to work on 20 December 2021.

No. 25-10233

In October 2023, Reardon entered the Admirals Club against American's policy. American contends—and Reardon disputes—that he also "attempted to diagnose a problem with and/or perform work on a dishwasher within the Admirals Club", which is outside the scope of his employment. Two Union members—Reardon's direct supervisors—reported his violation to American. Upon its meeting with Reardon, he admitted to entering the Admirals Club. The Senior Manager of Facility Maintenance terminated him on 3 November 2023 for violating the LCA.

Reardon filed this action against American under the Railway Labor Act (RLA) for retaliatory termination, 45 U.S.C. § 152, Third & Fourth. After American moved to dismiss, Reardon filed his First Amended Complaint (FAC), containing the same retaliatory-termination claim. American moved to dismiss the FAC under Rule 12(b)(1) and, alternatively, under 12(b)(6) (failure to state claim). It asserted Reardon's claim was a "minor" dispute under the RLA, thereby subjecting it to the exclusive arbitral provisions of the CBA and removing it from federal jurisdiction. The district court granted American's motion under Rule 12(b)(1), dismissing Reardon's claim.

## II

Reardon challenges the court's: evaluating his claim under Rule 12(b)(1), rather than under 12(b)(6); and dismissing his claim as a "minor" dispute falling outside its subject-matter jurisdiction.

The RLA "governs labor relations in the railroad and airline industries". *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.*, 120 F.4th 474, 480 (5th Cir. 2024). It provides two tracks for resolving violations of its provisions, depending on whether a dispute is "major" or "minor". *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers – Transp. Div.*, 973 F.3d 326, 334 (5th Cir. 2020). "Major and minor do not necessarily

3

refer to important and unimportant disputes, or significant and insignificant issues; rather, the terms refer to the bargaining context in which a dispute arises." *Sw. Airlines Pilots Ass'n*, 120 F.4th at 480 (citation omitted). Major disputes concern "the formation of [CBAs] or efforts to secure them". *Id.* (citation omitted). Minor disputes "contemplate[] the existence of a [CBA]" and "relate[] either to the meaning or proper application of a particular provision". *Id.* at 481 (citation omitted). LCAs supplement, and even supersede, CBAs "because [they] reflect[] the parties' own construction of the CBA". *Int'l Union of Operating Eng'rs, Loc. 351 v. Cooper Nat. Res., Inc.*, 163 F.3d 916, 919 (5th Cir. 1999).

Under the RLA, district courts have subject-matter jurisdiction over major disputes "to enjoin a violation of the status quo pending completion of the required procedures". *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 435 (5th Cir. 2021) (citation omitted). Minor disputes, on the other hand, are "subject to compulsory and binding arbitration before the National Railroad Adjustment Board", which has "exclusive jurisdiction . . . with two exceptions". *Sw. Airlines Pilots Ass'n*, 120 F.4th at 481 (citation omitted). The first, where "the extrajudicial dispute-resolution framework of the RLA is either ineffective . . . or unavailable". *Bhd. of Ry. Carmen (Div. of TCU) v. Atchison, Topeka & Santa Fe Ry. Co.*, 894 F.2d 1463, 1468 n.10 (5th Cir. 1990). The second, where defendant's "actions reflect antiunion animus or undermine the effective functioning of the union". *Sw. Airlines Pilots Ass'n*, 120 F.4th at 485 (citation omitted).

A

First at issue is whether Reardon's FAC is reviewed under Rule 12(b)(1) or 12(b)(6). Reardon contends: the court was required to "assume subject matter jurisdiction" and review the FAC under Rule 12(b)(6) because the jurisdictional question is intertwined with the merits. American

counters that the court correctly applied 12(b)(1).  "In either event, our review is *de novo* . . . ."  *Sw. Airlines Pilots Ass'n*, 120 F.4th at 481 (citation omitted).

Reardon's intertwined assertion is wholly conclusory, and he fails in his opening brief to address the applicable three-factor test, provided *infra*. *See In re S. Recycling, L.L.C.*, 982 F.3d 374, 380 (5th Cir. 2020).  Although this omission would ordinarily constitute forfeiture of the issue, we nonetheless analyze it.  *See Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021) (noting "[j]urisdictional arguments are one obvious exception" to general forfeiture rule).

Typically, a motion to dismiss under Rule 12(b)(1) is addressed first when, as in this instance, it is filed in conjunction with a motion to dismiss under 12(b)(6). *Sw. Airlines Pilots Ass'n*, 120 F.4th at 481.  "[W]hen the issue of jurisdiction is intertwined with the merits", however, courts "should deal with the objection as a direct attack on the merits of . . . plaintiff's case under . . . 12(b)(6)".  *M.D.C.G. v. United States*, 956 F.3d 762, 768–69 (5th Cir. 2020) (citation omitted).

In determining whether jurisdiction and the merits are intertwined, courts consider whether:  "the statutory source of jurisdiction differs from the source of the federal claim"; "the jurisdictional issue can be extricated from the merits and tried as a separate issue"; and "judicial economy favors early resolution of the jurisdictional issue".  *S. Recycling*, 982 F.3d at 380 (citation omitted).  Reardon's contention fails, based on balancing these three factors.

The first—whether the statutory source of jurisdiction differs from the source of the federal claim—favors Reardon.  The source of his retaliatory-termination claim is the RLA, and the district court has jurisdiction only if his claim:  is a major dispute; or falls within one of the two

minor-dispute exceptions. In either case, jurisdiction is under the RLA. *See supra.* Although this factor "goes a long way towards establishing that the issues are intertwined", it is not dispositive. *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1031 (5th Cir. 2022).

Regarding the second factor, the jurisdictional question can be extricated from the merits. This "question turns on whether the legal issues are *identical*". *Id.* (citation omitted) (emphasis in original). Reardon's retaliatory-termination claim is predicated on his termination under the LCA, which is separate and distinct from the jurisdictional issue of whether his claim constitutes a minor dispute and whether an exception applies.

Finally, judicial economy weighs against Reardon. Judicial economy favors "resolving contested fact issues at the pleading stage where, for instance, the jurisdictional question is much simpler than the merits question". *Id.* Reardon's claim meets that standard. Whether his claim constitutes a minor dispute and whether an exception applies is a question of law that should be decided first to "prevent[] [the] court . . . from prematurely dismissing [his] case" on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 568 (5th Cir. 1991).

Because two of the three factors reflect the jurisdictional and merits questions are not intertwined, we review Reardon's FAC under Rule 12(b)(1).

B

Reardon asserts the district court had jurisdiction because: the parties agreed to forgo the CBA's arbitral procedure, by instead agreeing on the LCA; and he pleaded a direct violation of the RLA—not a minor dispute.

In the alternative, he contends his claim falls within the animus exception for a minor dispute.

There are two types of attacks against a court's subject-matter jurisdiction: "facial" and "factual". *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The former challenges subject-matter jurisdiction on the pleadings alone, and the court must presume the factual allegations in the complaint are true. *Id.*

In a factual attack, "defendant submits affidavits, testimony, or other evidentiary materials". *Id.* Plaintiff then must "submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction". *Id.* "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction . . . there is substantial authority that the . . . court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (citation omitted). The district court's resolution of disputed facts under a factual attack is reviewed for clear error. *Id.*

American made a factual attack on Reardon's FAC by submitting seven exhibits with its motion to dismiss—the LCA, CBA, the Admirals Club guidelines, and four employee declarations. Accordingly, we review the FAC under that standard.

1

Reardon first contends the parties agreed to exclude disputes concerning the LCA from the CBA's grievance procedures, thereby removing his claim from mandatory arbitration under the RLA. He points to the following language of the LCA in support: "[Reardon] and the Union agree not to challenge [Reardon]'s suspension, termination, or discipline giving rise to this Agreement, or the terms of this Agreement, via the

contractual grievance procedure set forth in the [CBA] between [American] and the Union". As noted, the CBA's grievance procedure includes, *inter alia*, "appeal[s] to the System Board of Adjustment/Arbitration".

In *CareFlite v. Office and Professional Employees International Union, AFL-CIO*, a quorum of our court held parties to a CBA may contractually agree to exclude certain grievances from a CBA's arbitration requirements. 612 F.3d 314, 316 (5th Cir. 2010). Reardon and American made such an agreement because the LCA dictates the CBA's grievance procedures—including arbitration—do not govern, *inter alia*, "the terms of [the LCA]". Accordingly, because Reardon's dispute turns on a term of the LCA—whether he was fired for just cause—his claim is not arbitrable.

Although the two-judge panel in *CareFlite* held disputes can be contractually excluded from RLA-required arbitration, it diverged on the jurisdictional effect of that ruling. *Compare id*. at 322–23 (DENNIS, J., concurring), *with id*. at 325 (ELROD, J., concurring).

JUDGE DENNIS, in considering whether an arbitration-excluded dispute can be minor, reasoned that "[o]nce the parties have agreed to [exclude disputes from grievance procedures], any excluded dispute does not arise from any right conferred by the CBA" and is therefore not minor. *Id*. at 323 (DENNIS, J., concurring); *see Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 303 (1989) (holding minor disputes are those "arising or growing out of" CBA (citation omitted)). Therefore, under his approach, federal courts retain subject-matter jurisdiction over such disputes.

JUDGE ELROD (now Chief Judge), on the other hand, would not hold arbitration-excluded disputes are, by definition, not minor. *CareFlite*, 612 F.3d at 325 (ELROD, J., concurring). Rather, she would analyze them as a court would any other RLA dispute—under the major/minor dispute framework. *See id*.

No. 25-10233

We agree with the latter approach. Accordingly, jurisdiction exists only if Reardon's claim: is a major dispute; or is a minor dispute falling within an exception.

2

Reardon contends his claim is not a minor dispute because he pleaded a direct violation of the RLA. Our court looks to the "arguable basis" test in determining whether a dispute is minor. *Sw. Airlines Pilots Ass'n*, 120 F.4th at 483. "Under that test, a dispute is minor if . . . [defendant] has at least an arguable basis for its conduct in the express and implied terms of the parties' [CBA]." *Id.* (citation omitted). "The distinguishing feature of a minor dispute is that the dispute may be conclusively resolved by interpreting the existing [CBA]." *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (citation omitted). Defendant carries a "relatively light burden" to show a dispute is minor. *BNSF*, 973 F.3d at 335 (citation omitted).

As noted *supra*, Reardon's LCA supplements, and even supersedes, the CBA. *See Int'l Union of Operating Eng'rs*, 163 F.3d at 919. And Reardon's claim is conclusively resolved by interpreting his LCA—namely, whether American terminated him for cause. He does not dispute he entered the Admirals Club, which, as a non-traveling employee, is a basis for termination under the LCA. Accordingly, American had an "arguable basis" under the LCA/CBA for its action. *Sw. Airlines Pilots Ass'n*, 120 F.4th at 483.

Moreover, actions involving "RLA claims of retaliatory firing based on union affiliation . . . are routinely treated as minor disputes, in which judicial intervention is appropriate only if an exception applies". *Id.* at 484; *see Wright*, 990 F.3d at 435 (concluding dispute minor where plaintiff contended retaliatory-firing claim was "independent of the governing [CBA]"); *Atchison*, 894 F.2d at 1467–69 (rejecting plaintiff's assertion that

9

dispute was under RLA directly).  American therefore carries its "relatively light burden" of showing the dispute is minor.  *Sw. Airlines Pilots Ass'n*, 120 F.4th at 483 (citation omitted); *see Wright*, 990 F.3d at 435 ("If there is any doubt as to whether a dispute is major or minor a court will construe [it] to be minor." (citation omitted)).

3

For Reardon's alternative contention—his claim falls within the animus exception to a minor dispute—that "exception encompasses direct attacks on the union, as well as more clandestine attempts to punish employees for their union associations". *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 31 F.4th 337, 342 (5th Cir. 2022).  It is invoked only "in exceptional circumstances". *Id.* at 345 (citation omitted).

Consistent with this standard, Reardon alleges in his FAC that his termination was "driven by anti-union animus arising out of [his] actions as a Union representative who repeatedly engaged in workplace issues that involved Union and bargaining unit matters of interest to the result of becoming a thorn in [American's] side".  Similarly, he alleges "[t]he effect of [American]'s actions at issue here was to interfere with the union's internal affairs by forcing out its chosen thorn-in-the-side Union representative based on false and mendacious policy-violation accusations".

The district court found the following regarding the factual basis of Reardon's claim:  "he was terminated after a violation of the LC[A]"; his "then-fellow employees who are the source of [American]'s alleged anti-union animus . . . are themselves former members of the union"; and "the two employees, both union members, who were also placed on an LCA for stealing food from the Admirals Club complied with their LCAs and remain presently employed with [American]".  For the following reasons, the court did not clearly err in so finding.

10

In response to American's motion to dismiss, Reardon did not counter its exhibits with his own—an omission fatal to the jurisdictional allegations in his FAC, as quoted *supra*. *See Paterson*, 644 F.2d at 523 (holding 12(b)(1) factual attack requires plaintiff to "submit facts through some evidentiary method"); *Kling*, 60 F.4th at 285 (holding district court did not clearly err in its jurisdictional factfinding where plaintiff did not present counter evidence). Accordingly, his conclusory allegations do not establish anti-union animus. *See Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981) ("[W]hen a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to . . . plaintiffs' jurisdictional allegations".).

## III

For the foregoing reasons, the judgment is AFFIRMED.